IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> BRADLEY EUGENE WENDT, <br><br> Defendant. | Case No: 4:22-cr-199 <br><br> **DEFENDANT WENDT'S BRIEF IN SUPPORT OF MOTION FOR DISCOVERY SANCTIONS** |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 2

II. LEGAL STANDARD ....................................................................................................... 2

III. MISSING DISCOVERY .................................................................................................. 8

    1. All ATF NFA documents that specifically reference Wendt and his purchases or attempted purchases of machine guns under a law letter commencing during the time-frame of two years preceding the Government's commencement of their investigation of Wendt to present. .................................................................................................... 8

    2. ATF NFA Division written guidance and/or standard operating procedures in place during the last five years that relate to machine gun transfers, machine gun shoots, or the ability of police departments or law letter holders to allow others to fire the machine guns. ............................................................................................................................. 12

    3. The ATF NFA Division's approval of transfers of mini-guns, 50 caliber machine guns, belt-fed machine guns, and any other machine gun related to this case that the Government claims were unsuitable for law enforcement. ............................................ 14

    4. The ATF NFA Division's records regarding machine gun ownership by law enforcement in the State of Iowa within the last five years. .......................................... 15

    5. The ATF NFA Division's denials of machine gun transfers to law enforcement agencies based on suitability of use for law enforcement use, the size of the town, the number of officers, or any other condition the Government has objected to in this case. ....................................................................................................................................... 17

IV. REQUEST FOR RELIEF ............................................................................................... 17

## I.   INTRODUCTION

Defendant Bradley Eugene Wendt ("Wendt") hereby moves for sanctions against the Government. Specifically, the Government has failed to comply with the Court's Order Sustaining in Part and Overruling in Part Appeal from Magistrate Judge Order (Dkt. # 261) ("Order"). The Government has continued to refuse or fail to produce certain important discovery regarding ATF NFA Division guidance/SOPs, communications, and data. Further, with respect to some of that discovery, there appears to be a failure to preserve or collect that information from the ATF NFA Division. Accordingly, Wendt is requesting the opportunity to make a record and be heard on appropriate sanctions.

## II.   LEGAL STANDARD

The Court has long ago now confirmed the Government's obligation to produce all information "that favors the defendant or casts doubt on the United States' case" and warned the Government of the sanctions that would be imposed were the Government to fail in this important obligation:

> **Pursuant to the Due Process Protections Act, the Court confirms the United States' obligation to disclose to the defendant all exculpatory evidence-that is, evidence that favors the defendant or casts doubt on the United States' case, as required by *Brady v. Maryland,* 373 U.S.83 (1963) and its progeny, and ORDERS the United States to do so. Failure to disclose exculpatory evidence in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the Court.**

Rule 5 Order, Dkt. #17. Yet the Government continues to refuse to produce discovery despite an independent obligation to do so, specific defense requests for it, and Court orders requiring it.

The Government is obligated to produce discovery and, to the extent that such discovery was not preserved or collected, that failure needs to be addressed and a clear record should be made. "Although the Eighth Circuit 'has not applied the spoliation doctrine in a criminal case,' it

has implied that if it 'were to do so, a showing of the government's bad faith would be required.'" *United States v. Rederick*, No. 4:20-CR-40066-01-KES, 2021 WL 4772222, at *8 (D.S.D. Oct. 13, 2021), *aff'd*, 65 F.4th 961 (8th Cir. 2023) (citing *United States v. Tyerman*, 701 F.3d 552, 561 (8th Cir. 2012)). Federal law applies to the imposition of sanctions for spoliation of evidence. *Rock v. Smith*, 985 F. Supp. 2d 1066, 1071 (S.D. Iowa 2013) (citation omitted). "Under federal law, 'there must be a finding of *intentional destruction* indicating a desire to suppress the truth.'" *Id.* (citation omitted) (emphasis in original). Intentional destruction of evidence warrants dismissal. *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006).

Under Eighth Circuit law, "[s]anctions may be imposed against a litigant who is on notice that documents and information in his possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information." *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266 (8th Cir. 1993) (citation omitted). This duty "arises not only during litigation but also extends to that period before the litigation *when a party reasonably should know that the evidence may be relevant to anticipated litigation*." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (emphasis added). The imposition of sanctions for the destruction of documents is within this Court's sound discretion. *Capellupo v. FMC*, 126 F.R.D. 545, 550-552 (D. Minn. 1989). "Other sanctions may be imposed without a finding of intentional destruction, such as prohibiting the party from introducing certain evidence or expert testimony." *Merfeld v. Dometci Corp.*, 306 F. Supp. 3d 1070, 1083 n.9 (N.D. Iowa 2018) (citation omitted). The Court must also find that Defendant has suffered prejudice from the destruction. *Id.* at 845-46.

"The type of sanctions available for spoliation include entry of default judgment, an adverse inference instruction to the jury, exclusion of evidence, and the imposition of the prejudiced party's attorneys' fees or other monetary sanction." *Fidelity Nat. Title Inc. Co. v. Captiva Lake Inv., LLC*, Case No. 4:10-cv-1890, 2015 WL 94560, at *6 (E.D. Mo. Jan. 7, 2015). "This court 'is not constrained to impose the least onerous sanction available, but may exercise its discretion **to choose the most appropriate sanction under the circumstances**.'" *Ameriwood Indus., Inc. v. Liberman*, No. 4:06-CV-524, 2007 WL 5110313, at *4–5 (E.D. Mo. July 3, 2007) (emphasis added) (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir.1999)).

The intentional destruction of evidence includes the conscious dereliction of a known duty to preserve:

> When a party has a "known duty to preserve," that party's "conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party 'acted with the intent to deprive another party of the information's use' under Rule 37(e)(2)." *Ungar v. City of N.Y.*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018). Thus, whether the spoliator affirmatively destroys the data, or passively allows it to be lost, that party may be sanctioned for the spoliation of evidence. *See, e.g., Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 428-29 (W.D.N.Y. 2017) ("While knowing they had a duty to preserve the event recorder data, defendants allowed the original data on the event recorder to be overwritten.... On this record, the Court finds that defendants acted with the intent to deprive [plaintiff] of the use of the event recorder data"); *Ottoson v. SMBC Leasing &Fin., Inc.*, 268 F. Supp. 3d 570, 582-83 (S.D.N.Y. 2017) (conscious failure "to take any reasonable steps to preserve" relevant communications can satisfy the intent required of Rule 37(e)(2)) (collecting cases).[1]

---

[1] *See, e.g.*, *Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14-cv-6512, 2016 WL 4991623, at *20 (S.D.N.Y. Sept. 16, 2016) (ordering sanctions in part because defendants failed "to make prompt arrangements to move or copy all of their documents from the ... server" onto its new cloud-based system, in an attempt to shield assets from plaintiff); *CAT3 LLC v. Black Lineage, Inc.*, 164 F.Supp.3d 488, 501 (S.D.N.Y. 2016) (finding that "plaintiffs' conduct was intentional" and that "the intention was to manipulate the ... information specifically for purposes of this litigation," which met the "prerequisite for assessing sanctions under subsection (e)(2)"); *see also First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893, 2016 WL 5870218,

*Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2022 WL 2656787, at *15 (D. Conn. July 8, 2022); *see also State v. Hartsfield*, 681 N.W.2d 626, 632-33 (Iowa 2004) (holding spoliation instruction is proper where the State "knowingly allowed the recording to be destroyed").

The Government had a clear and important duty to preserve the documents. First, the ATF, as a government agency, had a duty to preserve records from the very beginning of Wendt's transfer applications. The Federal Records Act, 44 U.S.C. § 3101 *et seq.*, and the regulations implementing it require all federal agencies to maintain their records as a function of government. *See* 44 U.S.C § 3101. This duty is independent of any criminal investigation or case and is thus not limited to what may or may not be perceived to be subject to disclosure in a future case. It is also broader than a duty in a criminal case as it relates to the agency's functions generally and includes as its purpose the protection of the public in that regard.

---

at *3–4 (N.D.Ca. Oct. 7, 2016) (concluding that the appropriate spoliation remedy was an obligation to preserve text messages in the anticipation or conduct of litigation, ... took no reasonable steps to preserve text messages, and that those messages cannot be restored or replaced through additional discovery"); *GN Netcom, Inc. v. Plantronics, Inc.*, No. 12-cv-1318, 2016 WL 3792833, at *6, *14 (D. Del. July 12, 2016) (imposing monetary sanctions, punitive sanctions, possible evidentiary sanctions, if requested, and adverse inference jury instructions after finding that defendant "failed to take reasonable steps to preserve ESI which cannot be restored or replaced"); *O'Berry v. Turner*, No. 15-cv-64, 2016 WL 1700403, at *3–4 (M.D. Ga. Apr. 27, 2016) (concluding that "severe measures, such as those discussed in subdivision (e)(2), are most appropriate to remedy the wrong that has occurred" because "[d]efendants failed to take reasonable steps to preserve the ESI related to this case," "additional efforts to ensure the preservation of these materials once the spoliation letter was received" should have been made, and "[s]uch irresponsible and shiftless behavior can only lead to one conclusion—that [defendants] acted with the intent to deprive Plaintiff of the use of this information at trial"); *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-cv-60629, 2016 WL 815827, at *37 (S.D. Fla. Mar. 2, 2016) (imposing adverse inference sanctions against defendant for spoliation of evidence because the court found that defendant failed to take reasonable steps to preserve electronically stored information on his personal and company-owned devices); *Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-cv-5438, 2016 WL 491483, at *4–5, *12–14 (N.D. Cal. Feb. 8, 2016) (granting plaintiff a preclusion order, an adverse inference instruction, and attorneys' fees as sanctions because defendants willfully spoliated evidence by intentionally discarding devices that contained the electronic versions of the evidence despite having a duty to preserve relevant evidence).

This is a unique aspect of this case because the issue is not just a law enforcement agency's duty to preserve potentially exculpatory information. Rather, here, the Government has brought a case based on the ATF NFA Division's work as an administrative agency processing transfer applications and licenses and, specifically, based on the theory that the ATF was the victim: "The defendants . . . conspired with each other and other persons known and unknown to the Grand Jury, to defraud the United States, namely the ATF, by impairing, impeding, obstructing, and defeating the lawful government functions of the ATF in the administration of the law and regulations of the National Firearms Act and Gun Control Act pertaining to machine guns." Indictment, at 6. There can be no way the Government can be allowed to go forward in this case if the ATF NFA Division failed its legal obligations as a federal government agency to preserve its records.

Second, as a component of the DOJ, the ATF is also bound by the DOJ policy regarding the preservation of email correspondence. *See United States v. White*, 863 F.3d 784, 789 n.6 (8th Cir. 2017). The DOJ policy requires electronic communications to be preserved if they contain, for example, information about investigative activity, witnesses, or information that is potentially discoverable under *Brady*, Giglio, Rule 16, or Rule 26.2 (Jencks Act). *See* Memorandum from Deputy Attorney General James M. Cole (March 30, 2011), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/electronic-communications.pdf.

Third, the Government has a constitutional duty to ensure that the email correspondence and other documents are preserved because they related to an investigation and could be subject to disclosure in discovery in a criminal prosecution. *Id.; see also United States v. Bagley*, 473 U.S. 667, 681-82 (1985) (explaining it is the Government's burden to identify and produce

6

*Brady* information whether the defendant makes a specific request, general request, or no request for it); *see also* Court's Rule 5 Order, Dkt. #17. These obligations pertain to not just the U.S. Attorney's Office but to any law enforcement agency that is investigating or participating in the prosecution. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995). And they apply to not only what is in the U.S. Attorney's Office or law enforcement agency's possession or custody, but also to whatever is within its control. *Id*.

The duty to preserve is even greater in the criminal context, and the scope of the documents that must be preserved is not limited to just direct communications with a defendant, but anything regarding that defendant. *See, e.g.,* U.S. Dep't of Just., Just. Manual § 9-5.004 (2019) ("Prosecution team members should preserve for later review and possible disclosure all substantive e-communications created or received by team members during the course of an investigation and prosecution, and all e-communications sent to or received from lay witnesses, regardless of content.").

In sum, there can be absolutely no dispute that the ATF had a duty to preserve (1) all documents related to Wendt whether with him or just related to him (2) including email correspondence and other documents, notes, and text messages (3) from the beginning of the time period in question and beyond (2018 – present). The Government has attempted to be very strategic about not claiming the ATF NFA Division as part of the prosecution team in an apparent attempt to avoid this issue. Nevertheless, the following has now been established (1) the documents are within the possession, custody, or control of the Government; and (2) there is no privilege or other protection from the production of these documents.

### III.    MISSING DISCOVERY

The Court's Order addressed Wendt's request for five categories of ATF NFA Division discovery:

> **1.    All ATF NFA documents that specifically reference Wendt and his purchases or attempted purchases of machine guns under a law letter commencing during the time-frame of two years preceding the Government's commencement of their investigation of Wendt to present.**

Magistrate Judge Adams had already ordered the Government to produce this discovery and the Government did not appeal that order. Rather, the Government produced some discovery and stated, *inter alia*, that it has "disclosed relevant, discoverable communications between Wendt and NFA employees and, where appropriate, internal NFA correspondence." The Court agreed with Wendt that this was insufficient:

> The Court cannot tell if this means the Government is withholding some communications between Wendt and NFA employees that the Government has concluded are not relevant or discoverable. If so, the Government must produce those materials. If not, the Government must unambiguously communicate this to Wendt's counsel. Similarly, to the extent the Government is withholding internal NFA correspondence that specifically references Wendt, it must produce those documents. If not, it must ambiguously communicate this to Wendt's counsel.

Order, Dkt. #261, at 1. The Court ordered the Government to produce such materials and/or statements by August 31, 2023. *Id*. However, ***the Government has not produced any discovery in response to the Court's Order nor has it provided any statement as ordered by the Court***.

The documents the Government has produced show the following:[2]

---

[2] Attached to this filing are all of the emails the Government has produced in response to this category of discovery (with the exception of a few documents related to former Co-Defendant Williams's license): **Exhibits A-S**.

*First*, the ATF communications go to the very heart of this case. The Government must prove that Wendt knowingly and intentionally made false statements to the ATF that were material to the ATF's decisions whether to grant his applications for the transfer of machine guns. *See* 18 U.S.C. § 1001. The few communications that the Government has produced show Wendt was reaching out to the ATF from the very beginning in 2018 explaining exactly what he was doing and what he meant in his letters and the ATF approving the transfers. *See* Exs. A, C. The ATF carefully reviewed the transfers and was aware of and considered the various facts the Government now claims demonstrate the falsity and materiality of statements. *See* Exs. A-I, N, O. The ATF was also aware of the connection with Marcum. *See* Exs. B, D, E. In fact, the ATF was investigating Wendt's applications, talking to Wendt about them, having supervisors review them, and discussing them with the criminal agents including whether they should be approved. *See* Exs. A-I. And there can be no argument that the ATF let machine guns be transferred that it believed should not have been and then simply waited. Rather, the ATF was aware of the relevant facts and circumstances and approved these transfers.[3]

*Second*, the ATF knew there was confusion within the industry about the demonstration law letter requirements. In January 2023, the ATF issued a new demonstration law letter sample. Ex. P. When the Deputy Division Chief of the ATF NFA Division sent it out to the ATF NFA Division, she stated "I know we have been waiting a year for this release!" *Id*. She also stated, "This should help ease the tension with the ongoing questions when NFA reviews dealer sample letters." *Id*.

---

[3] Wendt timely filed a Notice of Public Authority Defense and has not received a response from the Government. *See* Fed. R. Crim. P. 12.3. In addition to the discovery, Wendt is entitled to a response from the Government regarding how it plans to rebut Wendt's claims.

*Third*, the ATF's investigation of Wendt began in 2018. In December 2018, the ATF began scrutinizing Wendt's transfer applications – including taking them to David Howell, Branch Chief of the Government Support Branch of the ATF NFA Division. *See* Ex. A, G. By February 2019, the ATF had been discussing Wendt and his transfer applications with the criminal agents as part of the case against Jonathan Marcum. *See* Ex. B. The ATF NFA Division continued to work with ATF criminal agents regarding Wendt throughout this time. *See* Exs. B, D, E, F. Also, during this time, Marcum was cooperating with the Government against Wendt. *See* Ex. E. The Government later had both Special Agent Tastle and Jonathan Marcum testify before the grand jury in this case. In March 2022, the ATF NFA Division made a referral to the ATF Field Office specifically regarding Wendt. *See* Ex. I. Subsequently, the ATF NFA Division began working with the Iowa Field Office. *See* Ex. J. But, again, the ATF had not only made the connection between Wendt and Marcum by December 2018 but had also begun investigating his transfers. *See* Ex. A. The Indictment specifically alleges the conspiracy (Count 1) started in July 2018 and charges Wendt with counts associated with alleged the Marcum transfers on October 31, 2018 (Counts 4 & 5) and January 15, 2019 (Count 6).

*Fourth*, the ATF failed to preserve relevant communications and the Government failed to collect relevant communications – including communications that are internal as opposed to just external communications with Wendt. There is no evidence the ATF NFA Division, ATF criminal agents, or a U.S. Attorney's Office took any steps to preserve communications regarding Wendt before April 2022. On April 4, 2022, ATF Special Agent Etnier, one of the case agents in this case, sent the ATF NFA Division a preservation request – but incorrectly limited to communications between them and Wendt, as opposed to any documents regarding Wendt (whether or not they were communications directly with Wendt). Ex. M. On May 8, 2023, almost

six months after the Indictment, AUSA Shotwell appears to have finally requested all documents regarding Wendt – but that request appears to be limited to the licensing component, FFLC, which has nothing to do with the transfers in question. Ex. U.

The result of this failure to preserve or collect documents has resulted in many missing documents:

1. ***Custodians – There are numerous missing email accounts from which nothing was separately produced***. Before March 2022, all email correspondence appears to come from just one email account despite there being over a half dozen other email account holders who were clearly having relevant conversations and were included at one point on those emails. This is made clear by the fact that the email correspondence demonstrates numerous people were involved in this matter and that almost all the early documents come from just one email account. It appears the Government only collected the email correspondence from this one account regarding the early transfers. Further, the email correspondence mentions the work of the Examiners who review and process the transfer applications but we do not have any notes, email correspondence, or other documents from them. Further, in the late collection attempt we do see that the ATF admits there were many email accounts it said were no longer accessible now. *See* Ex. U. Yet, it is clear there is some system established to capture and preserve documents. *See* Exs. U & R.

2. ***Attachments – Even with the documents the Government did produce, there are numerous missing attachments that were not produced***. And despite Wendt alerting the Government to its failure to produce attachments to many of these communications, it has failed to do so. Dkt. #257, at 3 n.1. The Government has failed to produce attachments to the following

emails: Bates #'s 15694; 15695; 15697-99; 15700-08; 15758-59; 15762-63; 15764-66; 15769-70.

      3.      ***Licenses – There are no documents produced relating to Wendt's licenses that he obtained or had reapproved subsequent to the beginning of this investigation***. There can be no splitting hairs between these documents and solely associated with Wendt's attempted purchases just as there can be no splitting hairs between Wendt's attempted purchases and those he is alleged to have authorized for others. Wendt's licenses go directly to his fitness and compliance with the law, including the laws he is alleged to have violated in the Indictment. In particular, this includes the license to manufacture machine guns the ATF granted Wendt in December 2022.

      **2.**      **ATF NFA Division written guidance and/or standard operating procedures in place during the last five years that relate to machine gun transfers, machine gun shoots, or the ability of police departments or law letter holders to allow others to fire the machine guns.**

This was another category of discovery Magistrate Adams ordered the Government to produce and the Government did not appeal. Instead, it simply responded with some documents and refused to comply with Magistrate Adams's order with respect to "the ability of police departments and law letter holders to allow others to fire machine guns." The Government did not file an appeal of the order or file any other motion for relief in this regard. Rather, it simply refused and stated that "it is not relevant or exculpatory." Dkt. #252, at 2. On August 17, 2023, the Court ordered the Government to comply with Magistrate Judge Adams's order by August 31. Order, Dkt. #261, at 3. The Court also ordered: "In addition, to the extent there is other written guidance or SOPs that have not yet been produced, the Government also must produce those materials by August 31." *Id*.

emails: Bates #'s 15694; 15695; 15697-99; 15700-08; 15758-59; 15762-63; 15764-66; 15769-70.

3. ***Licenses – There are no documents produced relating to Wendt's licenses that he obtained or had reapproved subsequent to the beginning of this investigation***. There can be no splitting hairs between these documents and solely associated with Wendt's attempted purchases just as there can be no splitting hairs between Wendt's attempted purchases and those he is alleged to have authorized for others. Wendt's licenses go directly to his fitness and compliance with the law, including the laws he is alleged to have violated in the Indictment. In particular, this includes the license to manufacture machine guns the ATF granted Wendt in December 2022.

**2. ATF NFA Division written guidance and/or standard operating procedures in place during the last five years that relate to machine gun transfers, machine gun shoots, or the ability of police departments or law letter holders to allow others to fire the machine guns.**

This was another category of discovery Magistrate Adams ordered the Government to produce and the Government did not appeal. Instead, it simply responded with some documents and refused to comply with Magistrate Adams's order with respect to "the ability of police departments and law letter holders to allow others to fire machine guns." The Government did not file an appeal of the order or file any other motion for relief in this regard. Rather, it simply refused and stated that "it is not relevant or exculpatory." Dkt. #252, at 2. On August 17, 2023, the Court ordered the Government to comply with Magistrate Judge Adams's order by August 31. Order, Dkt. #261, at 3. The Court also ordered: "In addition, to the extent there is other written guidance or SOPs that have not yet been produced, the Government also must produce those materials by August 31." *Id*.

On August 14, 2023, the Government produced the following:

| | Supplemental Discovery Disclosed 8-14-23 via USAfx | | | | |
|---|---|---|---|---|---|
| | 202201393 (Withdrawn by Applicant).pdf | 19129 | 19134 | 6 | 8/14/2023 |
| | 202202050 (Open Permit).pdf | 19135 | 19139 | 5 | 8/14/2023 |
| | 202202333 (Withdrawn by Applicant).pdf | 19140 | 19145 | 6 | 8/14/2023 |
| | 202202815 (Withdrawn by Applicant).pdf | 19146 | 19150 | 5 | 8/14/2023 |
| | Form 2 (2019313044).pdf | 19151 | 19154 | 4 | 8/14/2023 |
| | Form 2 (2020402589).pdf | 19155 | 19158 | 4 | 8/14/2023 |
| | Form 6 (201907456).pdf | 19159 | 19167 | 9 | 8/14/2023 |
| | Form 6 (202005710).pdf | 19168 | 19172 | 5 | 8/14/2023 |
| NFA - machine gun shoots | 23880-31306.pdf | 19173 | 19178 | 6 | 8/14/2023 |
| | 23902-31308.pdf | 19179 | 19185 | 7 | 8/14/2023 |
| | atf_ruling_2014_-_manufacturing-inventory_of_machineguns_for_le_and_military_2.pdf | 19186 | 19190 | 5 | 8/14/2023 |
| | CC.Op. 22766 - machinegun shooting range #2.pdf | 19191 | 19196 | 6 | 8/14/2023 |
| | ffl newsletter.pdf | 19197 | 19205 | 9 | 8/14/2023 |
| | Manufacture and Stockpiling of Machineguns - OLC Opinion Request (002).pdf | 19206 | 19236 | 31 | 8/14/2023 |
| | OLC Opinion re Manufacturing and Stockpiling of Machineguns - 4-1-11 (002).pdf | 19237 | 19246 | 10 | 8/14/2023 |
| | Revenue Ruling 54-180.pdf | 19247 | 19247 | 1 | 8/14/2023 |
| | Von Eichelberger v US.pdf | 19248 | 19250 | 3 | 8/14/2023 |

The Government's production of ATF guidance and SOPs regarding machine gun transfer, machine gun shoots, and the ability of law letter holders and law enforcement to allow others to shoot machine guns is patently lacking. *First*, the Government still has not produced the final version of the Law Letter Processing Guidance. *Second*, the Government has not produced any Form 5 guidance or SOPs – which represent a vast majority of the transfers and counts in this case (i.e., the "demonstration law letter" counts).

*Third*, the only guidance or SOPs provided regarding machine gun shoots or the authority of law letter holders or law enforcement to allow others to shoot machine guns is an October 24, 1979 opinion letter stating that just because someone else takes possession of the machine gun does not mean the machine gun has been "transferred" and generally approving of machine gun

13

shoots. Given the vast number and popularity of machine gun shoots in recent times, it is implausible to believe this issue has not been addressed internally by the ATF in the last forty years.

*Fourth*, the Government has produced no informal guidance or training materials at all. This is despite the ATF admitting it had been battling confusion in the industry with respect to machine gun transfers. *See* Ex. P. And, as mentioned above, despite the expanding popularity of machine gun shoots. It is difficult to believe that supervisors within the ATF NFA Division were not regularly sending out advice and providing training on these subjects.

> 3. **The ATF NFA Division's approval of transfers of mini-guns, 50 caliber machine guns, belt-fed machine guns, and any other machine gun related to this case that the Government claims were unsuitable for law enforcement.**

On August 17, 2023, the Court ordered the Government to produce the following by August 31, 2023:

> all of the ATF NFA Division's approvals in the last three years (i.e., dating to August 17, 2020) in the State of Iowa for mini-guns, .50 caliber machine guns, and belt-fed machine guns. In addition, if the ATF NFA Division maintains summary data on the number of approvals of such weapons nationwide (as might be found in an annual report or some other year-end-type summary), it must produce this information as well.

Order, Dkt. #261, at 4. The Court added a footnote to this last sentence: "To be clear, the ATF NFA Division is not required to create a report or document that does not already exist. So, for example, if the ATF NFA Division theoretically could mine its data to create a report showing the total number of approvals but has not previously done so for the time period in question, no disclosure is required." *Id*. at 4 n.2.

On August 31, 2023, instead of producing the discovery in the normal course, the Government filed a Notice Regarding Disclosure of NFA Division Information with sealed

14

exhibits. The Government did not separately produce any discovery to Wendt. The Government's disclosure included sealed reports regarding the number of approvals in Iowa. The Government anonymized this data due to concerns over whether the information is protected as tax return information. The Government did not produce anything regarding nationwide data. Apparently, the Government is taking the position that the ATF NFA Division has never run a report during this entire timeframe regarding the number of mini-guns, .50 caliber machine guns, or belt-fed machine guns that it has approved. This is remarkable as the ATF NFA Division is in charge of the NFRTR, which would be the database that contains the information, as well as demonstrably false given just the information that is available publicly, *see* https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download, Exs. 7-9.

    **4.**    **The ATF NFA Division's records regarding machine gun ownership by law enforcement in the State of Iowa within the last five years.**

On August 17, 2023, the Court ordered the Government to produce: "By August 31, 2023, the ATF NFA Division must produce records in its possession showing which law enforcement agencies in Iowa had machine guns in the past five years and the number of machine guns each such agency possessed." On August 31, 2023, instead of producing what the Court ordered, the Government (1) produced only transfers of machine guns to law enforcement (as opposed to what they possessed during the time); and (2) did not identify the particular law enforcement agency. The Government did not file a motion for protective relief, or any motion at all, and instead simply stated that if the Court meant what it actually said then the Court should let the Government know and it will comply with the Order. The Government has not produced any other discovery in response to the Court's Order.

The ATF NFA Division manages the National Firearm Registration and Transfer Record ("NFRTR"). The NFRTR is the central registry of all NFA firearms in the U.S. that are not in the

possession or under the control of the U.S. Government. The registry includes: (1) the identification of the firearm, (2) date of registration, and (3) identification and address of the person entitled to possession of the firearm (the person to whom the firearm is registered). This is as the ATF defines it in its National Firearms Act Handbook and per 26 U.S.C. 5841(a). It would be incredibly easy and simple for the ATF to run the search the Court ordered and produce the information. However, what has become clear is that the data is inconsistent with the Government's theory of the case and it has therefore resorted to tactics such as this to limit the information from being provided to the defense. Further, there can be no argument that what law enforcement agencies in the State of Iowa possess machine guns is confidential information. That should be public information and, at the very least, subject to discovery in a criminal case. Again, the Government did not seek any protective relief from the Court before refusing to comply with the Court's Order. This should be public information and, at minimum, subject to production in a federal criminal case brought on behalf of the ATF NFA Division.

  The details of these actual records are important to the defense and the Government is denying the defense the ability to compare details of the transactions; to bring up arguments regarding the interpretation and materiality of certain terms; to rebut the Government's assertions regarding what machine guns are appropriate or suitable for law enforcement or FFL-SOTs to obtain; and to effectively conduct further investigation on these matters.

  Failing to identify the particular agency prevents the defense from conducting further investigation into what machine guns the agency possesses, under what circumstances it came to possess them, what they are used for, whether they have ever been shot by non-law enforcement, etc. Further, the Government over and over makes the point in its case that law enforcement agencies do not need or use machine guns – not just that they did not acquire them. The

Government cannot be allowed to unilaterally amend the Court's Order to limit the information produced to simply what was acquired during the time in question.

    **5.    The ATF NFA Division's denials of machine gun transfers to law enforcement agencies based on suitability of use for law enforcement use, the size of the town, the number of officers, or any other condition the Government has objected to in this case.**

On August 17, 2023, the Court ordered the Government to produce, by August 31, 2023, the following: "By August 31, 2023, the Government must produce records reflecting the ATF NFA Division's denials of machine gun transfers to law enforcement agencies in the State of Iowa during the past five years based on suitability (or lack thereof) for law enforcement use, the size of the town, or the number of officers in the police department."

On August 31, 2023, the Government filed its answer to this question. Dkt. #268-1, Govt. Ex. 3. Wendt will be seeking admission of this statement at trial. In addition, the defense had also included "any other condition the Government has objected to in his case." This was not specifically part of the Court's Order but the Government should nonetheless be prohibited from raising any other basis for refusal to approve the transfer of a machine gun to a law enforcement agency. It would make no sense to allow the Government to raise some other basis to deny a transfer to a law enforcement agency after the fact now that it has refused to provide such discovery. In that regard, it is not a defendant's responsibility or obligation to identify the specific information favorable to the defense. The defense has done its best to raise this issue, the Government has submitted its response, and now the record should stand on this issue.

**IV.    REQUEST FOR RELIEF**

In conclusion, Wendt respectfully requests the following relief:

    1.    **Production of Discovery** – An order requiring the Government to comply with the Court's August 17, 2023 Order and produce:

    a.    Email correspondence and all other communications in response to category #1.

    b.    Guidance and SOPs in response to category #2.

    c.    The national data the ATF NFA Division has compiled and previously reported either internally or externally in response to category #3.

    d.    A complete response to category #4 including the possession of machine guns and the identification of the law enforcement agency.

2.    **Discovery Protocol & Hearing** – A filing from the Government explaining the preservation, collection, and production protocol that was used in this case to be followed by a hearing with the applicable custodians responsible for the collection of documents from the ATF NFA Division (with those custodians appearing by video if necessary or, in the alternative, allow the defense to take their depositions). There will not be another opportunity to create such a record and the denial of the ability to create a record would severely prejudice the defense and its ability to prepare for trial. At trial, the Government will simply not call witnesses with missing communications and not call the requisite custodians. Further, the Government will attempt to block ATF NFA employees from testifying based on *Touhy* regulations. While the Government may control the charges, it should not be able to control the facts, too.

3.    **Sanctions** – Sanctions to include dismissal, exclusion of witnesses and evidence, and/or a spoliation instruction at trial. It would be an unjust and perverse result to allow the Government to make its case based on the importance of what Wendt said he was doing, to capture all of his email, social media, text messages, etc., and then to deny the same to Wendt when it was the Government that has brought the case against him. Likewise, it would be unjust and produce an unfair trial to allow the Government to (a) introduce evidence on a subject on which it has not fully complied with its discovery obligations or (b) call a witness for whom it

has not provided all discovery. These may need to be decisions made as trial approaches, but a record regarding the preservation and collection of that discovery is necessary now. In that regard, Wendt reserves all objections to evidence the Government may wish to produce at trial, including but not limited to the Government's failure to disclose or produce discovery favorable to the defense.

| | |
|---|---|
| Dated: September 14, 2023 | **FAEGRE DRINKER BIDDLE & REATH LLP** |
| | */s/ Nick Klinefeldt*<br>Nicholas A. Klinefeldt, AT0008771<br>Rachel A. Yaggi, AT0014994<br>801 Grand Avenue, 33rd Floor<br>Des Moines, Iowa 50309<br>Telephone: (515) 248-9000<br>Fax: (515) 248-9010<br>*Nick.klinefeldt@faegredrinker.com*<br>*Rachel.yaggi@faegredrinker.com* |
| | ***ATTORNEYS FOR DEFENDANT WENDT*** |

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September 2023, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/ Paulette Ohnemus*

US.359486064.01