IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | 4:22-cr-00199-SHL-HCA-1<br><br><br>**ORDER ON MOTIONS IN LIMINE AND<br>MOTION TO EXCLUDE EXPERT<br>TESTIMONY** |

## I.      INTRODUCTION.

In this prosecution for conspiracy to defraud the United States and making false statements, the parties have very different views of what the case is about and which evidence is relevant. For reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Government's Motion to Exclude Wendt's Proffered Expert Testimony (ECF 282) and GRANTS IN PART and DENIES IN PART each side's Motions in Limine (ECF 288; ECF 296). As is often the case with rulings on motions in limine, these rulings are without prejudice and subject to reconsideration if the evidence at trial is different than the Court is anticipating.

## II.      BACKGROUND.

### A.  Summary of Charges.

The Government alleges that Defendant Bradley Eugene Wendt unlawfully exploited his position as Chief of Police for the City of Adair, Iowa, by making false statements to the Bureau of Alcohol, Tobacco, and Firearms (ATF) to obtain machine guns. The charges emanate from a federal statute criminalizing the possession and transportation of machine guns manufactured after May 19, 1986. *See* 18 U.S.C. § 922(o); 27 C.F.R. § 479.105(a). Federal law contains an exception for use by the United States, any State, or any department, agency, or political subdivision thereof with prior approval by the ATF. *See* 18 U.S.C. § 922(o)(2)(A); 27 C.F.R. § 479.105(a). The parties agree that the City of Adair is a political subdivision of the State of Iowa and that it (or, more precisely, its Police Department) can, through its Chief of Police, lawfully acquire and possess machine guns under section 922(o)(2)(A). (ECF 211-1, p. 9; ECF 223, p. 6.) The Indictment describes two methods that can be used for such acquisitions. (ECF 2, ¶¶ 8–10.) Wendt's alleged

misuse of these two methods forms the basis for the first fourteen of the fifteen charges against him in the Indictment.[1]

Under the first method, a government agency (such as a police department) submits a "purchase law letter" seeking approval from ATF to make a direct purchase of a machine gun in the agency's name. (Id., ¶¶ 7–8, 10.) The agency "typically identifies the quantity, make, model, and cost of the machine gun it seeks to purchase. The agency further represents the machine gun is being acquired for the agency's official use and not for the purpose of resale or transfer." (Id., ¶ 11.) If the transaction is authorized and consummated, the agency becomes the registered owner of the machine gun.

Under the second method, the government agency submits a "demonstration law letter" to an FFL-SOT—i.e., a federal firearms licensee authorized to possess machine guns—stating that the agency has "a need for a particular machine gun or an interest in seeing a demonstration of a particular machine gun for potential future purchase." (Id., ¶¶ 2, 12.) The FFL-SOT then submits that letter to ATF as part of an application to acquire a machine gun "for use as a sample for demonstration to potential law enforcement agency purchasers." (Id., ¶ 9.) If the transaction is authorized and consummated, the FFL-SOT becomes the registered owner of the machine gun.

"Purchase law letters" and "demonstration law letters" are "drafted by a law enforcement official, in their official capacity as a law enforcement officer." (Id., ¶ 10.) The Indictment alleges that Wendt exploited his position as Chief of Police to unlawfully obtain machine guns through both types of letters. As to purchase law letters, the Indictment alleges that, between October 2019 and August 2021, Wendt drafted, signed, and transmitted letters to ATF "in which he falsely stated: (1) that the Adair Police Department was purchasing machine guns for the official responsibilities and duties of the Adair Police Department; (2) that the machine guns would be the property of the Adair Police Department; and (3) that the machine guns were not being acquired for the purpose

---

[1] The Indictment originally contained twenty counts, but the Government voluntarily moved to dismiss Counts 10, 11, 12, 17, and 19. (ECF 289.) The Court granted the motion to dismiss (ECF 294), and thus only fifteen counts remain. For simplicity at trial, the remaining counts have been renumbered as follows:

| Count Number (Indictment) | Count Number (Trial) |
| --- | --- |
| 1 through 9 | 1 through 9 (no change) |
| 13 through 16 | 10 through 13 |
| 18 | 14 |
| 20 | 15 |

2

of resale or transfer." (Id., ¶¶ 19, 26.) The Indictment alleges that Wendt used purchase law letters to acquire ten machine guns for the purported official use by the City of Adair. (Id., ¶ 26.) Wendt then allegedly sold six of those machine guns for personal profit. (Id., ¶¶ 26–28.)

For example, in December 2020, the Indictment alleges that Wendt submitted a purchase law letter(s) to acquire three H&K, MP7A2 machine guns for $2,080 each for the City of Adair, which he paid for with his own funds. (Id., ¶ 27.) In July 2021, he sold two of those guns to a Florida-based buyer for $50,000, which the buyer wired directly to Wendt's personal bank account. (Id.) In February 2022, Wendt sold the third MP7A2 machine gun and an H&K, MP5SD3 machine gun—similarly acquired for official use and paid for with $3,300 of Wendt's own funds—to an Alabama-based buyer for $34,500. (Id., ¶ 28.) The check for the second transaction was addressed to "Brad Wendt" and deposited into Wendt's BW Outfitters account. (Id.) Wendt allegedly made a personal profit of $74,960 from these transactions. (Id., ¶¶ 27–28.)

The Indictment also alleges that Wendt misused demonstration law letters. It alleges that, between July 2018 and August 2022, Wendt signed and transmitted demonstration law letters in which "Wendt wrote from himself as the Adair Chief of Police to himself as the owner of BW Outfitters [and] falsely stated that the Adair Police Department wanted a demonstration of the machine guns for potential future purchase." (Id., ¶ 20.) BW Outfitters submitted those letters to ATF and acquired thirteen machine guns purportedly for demonstration by the Adair Police Department. (Id., ¶ 33.)

For example, in a demonstration letter dated July 19, 2020, which resulted in BW Outfitters acquiring an FN, M2HB, .50 caliber, belt-fed machine gun for official demonstration to the Adair Police Department, Wendt stated that the belt-fed gun was "ideal" for the police department "based on its price and availability." (Id., ¶ 34.) He personally paid $17,896 for the gun and, after BW Outfitters received it, mounted it to his personally-owned, armored Humvee. (Id.) On April 16, 2022, Wendt then charged members of the public $5 per round of ammunition to shoot it. (Id.) (The public shooting event separately gives rise to (renumbered) Count 15 of the Indictment, which alleges illegal possession of a machine gun.) (Id., ¶¶ 34, 51.) Similarly, in a demonstration letter authored on November 29, 2021, in an attempt to acquire a M134 minigun, Wendt stated the Adair Police Department wanted the gun for official demonstration "for possible future purchase and use of our officers in the performance of their official duties" because the minigun was "suitable for

engagements and suppressive fire." (Id, ¶ 36.) ATF disapproved the transfer because the minigun was "not suitable for law enforcement use." (Id.)

Wendt allegedly submitted demonstration law letters to FFL-SOTs other than BW Outfitters, including Williams Contracting and others around the country. (Id., ¶¶ 37, 41–42.) These letters allegedly contained similar false statements, including statements describing the requested machine gun as "particularly suitable for [Adair Police Department's] officers while conducting special operations and high-risk prisoner transportation details." (Id., ¶ 41.) In total, Wendt wrote twenty-two demonstration letters to these other FFL-SOTs requesting demonstrations "for potential future purchase" of fifty-two machine guns, twenty-seven of which were in fact transferred and acquired by those FFL-SOTs. (Id., ¶ 4.) The Indictment alleges that "the Adair Police Department was not interested in and was not considering purchasing the machine guns identified" in the letters. (Id., ¶ 20.)

Based on this conduct, the Indictment alleges in Count 1 that Wendt conspired with his now-dismissed co-defendant, Robert Allen Williams, to make false statements and defraud ATF in violation of 18 U.S.C. §§ 371, 1001(a)(2). (Id., ¶¶ 15–44.) In (renumbered) Counts 2 through 14, the Indictment alleges that Wendt made false statements to ATF via purchase law letters and demonstration law letters in violation of 18 U.S.C. § 1001(a)(2). (Id., ¶¶ 45–50.) Finally, in (renumbered) Count 15, the Indictment alleges Wendt illegally possessed and aided and abetted the possession of a machine gun in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and 2 when he hosted a public machine gun shoot on April 16, 2022. (Id., ¶¶ 31, 51.)

   *B. Evidentiary Disputes.*

Both sides have filed motions in limine (ECF 288; ECF 296), plus the Government has filed a motion to exclude some of Wendt's proffered expert testimony (ECF 282). In most respects, as explained more fully below, the motions in limine do not require extensive analysis. Each side simply wants to ensure adherence to the Federal Rules of Evidence or well established principles of federal law. In a few instances, however, the motions in limine and Government's motion to exclude address overarching questions about what the case is really about; i.e., what the Government must prove to obtain convictions on each charge, which defenses are legitimately available to Wendt, and what it means for a false statement to be "material" in the circumstances presented here. For example, Wendt is prepared to offer expert testimony that ATF either would not have considered some of his statements to be "material" or literally could not have construed

those statements as "false" given his position as Chief of Police for the Adair Police Department. He also intends to offer expert testimony about what ATF considers acceptable or "legal" with respect to public machine gun shoots (which are at the center of renumbered Count 15). The Government argues that Wendt's position on these issues rests on a misunderstanding of governing law. To help sort these issues out, the Court will first summarize its understanding of the governing legal principles applicable to the offenses the Government accuses Wendt of having committed, then turn to the motions.

## III.    SUMMARY OF THE CASE.

Given the unusually high volume of pretrial motion practice, the Court has a better sense than normal about what is in dispute, how the Government plans to try to prove its case, and how Wendt intends to defend the charges. It is clear to the Court from the extensive pretrial submissions that the parties are not on the same page on a variety of important issues, including: (i) what "materiality" means in the context of the charges against Wendt; (ii) whether and to what extent the governing statutes and regulations are vague or ambiguous; and (iii) which defenses are factual in nature and should be presented to the jury versus which raise purely legal issues for the Court to decide.

Broadly speaking, the Government is bringing four categories of charges: first, in Count 1, the Government charges Wendt with conspiracy to defraud ATF or make false statements to ATF in violation of 18 U.S.C. §§ 371 and 1001(a)(2); second, in Counts 2 and 3, the Government charges Wendt with making false statements to ATF in violation of 18 U.S.C. § 1001(a)(2) when he issued purchase law letters stating that machine guns would be used to carry out the official duties and responsibilities of the Adair Police Department and were not being acquired for the purpose of resale or transfer; third, in Counts 4 through 14, the Government charges Wendt with making false statements to ATF in violation of 18 U.S.C. § 1001(a)(2) when he stated in demonstration law letters that the machine guns were being requested for demonstration for potential purchase by the Adair Police Department[2]; and fourth, in Count 15, the Government charges Wendt with illegally possessing or aiding and abetting the illegal possession of a machine gun in violation of 18 U.S.C. §§ 922(o), 924(a)(2), and 2.

---

[2] Counts 4 through 13 are distinct from Count 14 in that the Government alleges, as to the former, that Wendt intended through the false statements to acquire the machine guns for his own personal gain and profit, whereas he allegedly intended, as to the latter, to acquire the machine gun for the personal gain and profit of his former co-Defendant Williams. This distinction is not material to the governing legal principles.

The Government brought Count 1 (the conspiracy charge) in the alternative and therefore may prove it one of two ways: (1) Wendt conspired with one or more other persons to defraud ATF; or (2) Wendt conspired with one or more other persons to make false statements to ATF. *See United States v. Ervasti*, 201 F.3d 1029, 1039 (8th Cir. 2000) ("Though it is not divided formally into subsections, § 371 plainly establishes two offenses. . . ."). The former type of conspiracy is broader and more open-ended than the latter in that the Government may prove a conspiracy to defraud ATF by showing that the purpose of the conspiracy was to "impede, impair, obstruct, or defeat a lawful function of [ATF]" through means that "involved dishonesty, deceit, craft, or trickery." *United States v. Santisteban*, 501 F.3d 873, 881 (8th Cir. 2007); *see also United States v. Murphy*, 957 F.2d 550, 553 (8th Cir. 1992) (describing the conspiracy to defraud prong as the "more general" of the two). The Court agrees with Wendt that he should be given more latitude to present evidence in defense of this kind of "general" conspiracy charge. By contrast, a conspiracy to make false statements to ATF requires proof that, among other things, Wendt conspired with at least one other person to make knowingly false statements concerning a material fact about a matter within ATF's jurisdiction. *See United States v. Wintermute*, 443 F.3d 993, 1000 (8th Cir. 2006). This is a narrower theory for which a correspondingly narrower amount of information is relevant on both the Government and Defense sides.

Some of the most significant disputes between the parties revolve around what "material" means for purposes of the alleged conspiracy to make false statements and the individual false statements charges in Counts 2 through 14. Eighth Circuit precedent on this issue is clear: "a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed." *United States v. Robinson*, 809 F.3d 991, 999 (8th Cir. 2016) (cleaned up). "It is not necessary for the government to prove that it actually relied on the false statement for it to have been material." *Id.* The Eighth Circuit has therefore repeatedly and consistently held that it is not a valid defense to a false statement charge that the truth or falsity of the statement was not outcome determinative in the context of the particular transaction at issue. *See, e.g.*, *id.* at 1000 (affirming conviction even though government witness did not characterize the statements as "material"); *United States v. Pizano*, 421 F.3d 707, 722 (8th Cir. 2005) ("[The defendant's] argument fails because it misconstrues the materiality element of bank fraud by improperly injecting a reliance requirement into the analysis.").

6

In a related argument, Wendt argues there is ambiguity in the governing statutes and regulations that calls into question the legitimacy of the charges against him. This is a more appropriate subject for a motion to dismiss than a motion in limine, but the argument is unpersuasive regardless of the context in which it is made. At least two federal appellate courts have upheld convictions for similar conduct to that charged against Wendt, with the Sixth Circuit rejecting a void-for-vagueness challenge akin to the one Wendt appears to be raising here. *See United States v. Theunick*, 651 F.3d 578, 585–86 (6th Cir. 2011) (rejecting vagueness challenge); *see also United States v. Kelerchian*, 937 F.3d 895, 907–08 (7th Cir. 2019) (affirming conviction based on defendant's use of false statements in demonstration law letters).

Contrary to Wendt's argument, there is nothing ambiguous or vague—and certainly not to the level of constitutional infirmity—about the statutes and regulations governing the acquisition and transfer of machine guns. The principal statute is 18 U.S.C. § 922(o), which makes it "unlawful for any person to transfer or possess a machine gun" but contains an exception for machine guns transferred to or possessed by the United States, a State, or a department, agency, or political subdivision thereof. *See* 18 U.S.C. § 922(o)(2)(A). Federal law prohibits the transfer of machine guns unless a "written application" is filed with and approved by ATF. *See* 26 U.S.C. § 5812(a). "Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." *Id.*

Congress delegated authority to the Attorney General to promulgate rules and regulations regarding the enforcement of section 922(o) and related laws. *See Kajmowicz v. Whitaker*, 42 F.4th 138, 146 (3d Cir. 2022); *see also* 18 U.S.C. § 926(a); 26 U.S.C. § 7805(a). The Attorney General subdelegated this authority to the ATF Director. *See Whitaker*, 42 F.4th at 146, n.2. Pursuant to its delegated authority, ATF has promulgated rules for two types of permissible transfers of machine guns: (i) "the sale or distribution of such weapons for the official use of Federal, State or Local governmental entities," 27 C.F.R. § 479.105(c); and (ii) the transfer of machine guns to authorized dealers when "it is established by specific information [from the machine gun dealer] the expected governmental customers who would require a demonstration of the weapon, information as to the availability of the machine gun to fill subsequent orders, and letters from governmental entities expressing a need for a particular model or interest in seeing a demonstration of a particular weapon," *id.* § 479.105(d). The parties have used the phrase "purchase law letters" to describe the first method and "demonstration law letters" to describe the second.

7

Read collectively, and as relevant here, the governing statutes and regulations are not ambiguous. As it pertains to purchase law letters, the applicant must submit a "written application," 26 U.S.C. § 5812(a), confirming that the machine gun is "for the official use of Federal, State or Local governmental entities," 27 C.F.R. § 479.105(c). This is a straightforward requirement designed to confirm that a local law enforcement agency intends to make "official use" of the weapon before the transfer is approved. Similarly, the demonstration law letter is part of the "written application," 26 U.S.C. § 5812(a), that must, among other things, confirm to ATF the existence of a local law enforcement agency that is interested in a demonstration of the machine gun(s) for potential acquisition. Nothing in the governing statutes or regulations permits the acquisition of a machine gun for personal ownership, and thus the predominant issue in the Government's case against Wendt is the same as the one the Sixth Circuit identified in *United States v. Theunick*: "whether [Wendt] used the authority of [his] office[] as a pretext for the personal use of automatic weapons." 651 F.3d at 585; *see also Kelerchian*, 937 F.3d at 908 ("From the content of these letters, a reasonable jury could find that these were false requests for demonstrations. The letters could have had no other purpose.").

## IV.   ANALYSIS: THE GOVERNMENT'S MOTION TO EXCLUDE WENDT'S PROFFERED EXPERT TESTIMONY.

*A. Legal Standards.*

With the governing principles described above in mind, the Court must evaluate the parties' respective motions, starting with the Government's Motion to Exclude Wendt's Proffered Expert Testimony. The admissibility of expert testimony is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Rule 702 serves a "gatekeeping function" to ensure scientific testimony is relevant and reliable. *Union Pac. R.R. v. Progress Rail Servs. Corp.*, 778 F.3d 704, 709 (8th Cir. 2015). "Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court, and these decisions will not be disturbed on appeal absent an abuse of that discretion." *Neb. Plastics,*

*Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 415 (8th Cir. 2005). Still, the trial court's gatekeeping function must not undermine the jury's responsibility to weigh experts' evidence and credibility. *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997) ("Questions of an expert's credibility and the weight accorded to his testimony are ultimately for the trier of fact to determine.").

Expert testimony is admissible if it passes a three-part test: (1) the testimony must be relevant and useful to the factfinder; (2) the expert must be qualified to assist the factfinder; and (3) the testimony must be "reliable." *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021). The proponent of the testimony bears the burden of showing the expert is qualified to render an opinion and that his or her methodology was properly applied to the facts at issue; however, doubts should be resolved in favor of admissibility. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006). The standard for determining whether expert testimony is relevant is low. *Scott v. City of Sioux City*, 68 F. Supp. 3d 1022, 1041 (N.D. Iowa 2014). "[T]o satisfy the relevance requirement of Rule 702 and *Daubert*, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Id.* (quotation omitted).

As to reliability, the district court is afforded "the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972, 991 (D. Minn. 2013) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999) (internal quotation omitted)). Experts have "wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Disability Advocs., Inc. v. Paterson*, No. 03-CV-3209(NGG)(MDG), 2008 WL 5378365, at *2 (E.D.N.Y. Dec. 22, 2008) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). The Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Marmo*, 457 F.3d at 757 (quoting *Kumho Tire Co.*, 526 U.S. at 152 (internal quotation omitted)).

As a general matter, expert witnesses are not authorized to testify to legal conclusions or answer questions of law. *S. Pine Helicopters, Inc. v. Phx. Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). Nonetheless, an expert's opinion "is not objectionable just because it embraces an ultimate issue." Fed R. Evid. 704(a). Expert "[o]pinions that 'merely tell the jury what result to

reach' are not admissible." *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (quoting Fed. R. Evid. 704 advisory committee note to 1972 amendment). "The evil to be avoided is having the expert offer legal conclusions on issues that will be the subject of the Court's instructions to the jury." *Klossner v. IADU Table Mound MHP, LLC*, No. 20-CV-1037-CJW-KEM, 2021 WL 3439419, at *4 (N.D. Iowa Apr. 16, 2021) (quoting *Porters Bldg. Ctrs., Inc. v. Sprint Lumber*, No. 16-06055-CV-SJ-ODS, 2017 WL 4364209, at *2 (W.D. Mo. Oct. 2, 2017)).

      *B.  The Court Grants in Part, Denies in Part, and Reserves Ruling in Part on the Government's Motion to Exclude Wendt's Proffered Expert Testimony.*

      Wendt plans to offer testimony from Rick Vasquez, a former ATF employee who held positions as Acting Chief and Assistant Chief of the Firearms Technology Branch and Acting Chief of the Firearms Training Branch during his fourteen-year career with the agency. (ECF 282-2, p. 3.) During this time, he instructed ATF personnel on the definitions of firearms in the Gun Control Act and National Firearms Act and developed a machine gun identification course for ATF counsel, agents, and investigators. (Id.) He also "reviewed all Standard Operating Procedures for the NFA Branch" and made recommendations that led to the procedures being "upgraded." (Id., p. 4.) Vasquez reports a "working knowledge of NFA transfer procedures." (Id.)

      The Government argues, in the first instance, that Vasquez lacks the requisite training and experience to testify about ATF licensing and transfer procedures given that his experience with ATF revolved around firearms technology, not licensure. Although this is a close call, the Court will not exclude Vasquez's testimony altogether under Fed. R. Evid. 702. The fact that his fourteen-year career with ATF revolved primarily around matters other than machine gun licensure is an appropriate subject for cross-examination but does not mean he has no knowledge on licensure issues that might "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702.

      The Government next argues that significant portions of Vasquez's testimony are inadmissible both due to deficiencies in his experience and because, among other things, the testimony is irrelevant, purports to state what the law is (which is typically the prerogative of the Court), and raises a significant risk of juror confusion as to the legal definition of "materiality."

      The Court will begin by summarizing the testimony it *will* allow from Vasquez provided the defense lays adequate foundation regarding his knowledge and experience and the relevance of the testimony. <u>First</u>, although Vasquez's testimony is likely to be duplicative of testimony from one or more Government witnesses, the Court will allow him to explain what machine guns are,

the role of ATF in regulating them, and the basic mechanics of the licensure process for Federal Firearms Licensees (FFLs) and Federal Firearms Licensee Special Occupational Taxpayers (FFL-SOTs). Second, Vasquez may explain the types of licenses held by Wendt or entities with whom he is or was affiliated. Third, Vasquez will be allowed to explain that local law enforcement agencies and other governmental entities may acquire and possess machine guns and how they obtain permission from ATF to do so, including describing documentation requirements such as the Form 5. Fourth, he will be allowed to describe the purchase law letter and demonstration law letter requirements, including explaining who typically provides such letters and what purpose they serve. Fifth, he may testify about the importation of machine guns into the United States, including describing documentation requirements such as the Form 6. Sixth, he may explain what FFL-SOTs are permitted to do with machine guns they have lawfully acquired when the FFL-SOT goes of out business and surrenders the license. Seventh, he may testify about the types and uses of the machine guns at issue in the case, including their potential uses by law enforcement agencies.

Beyond these areas, the Court agrees with the Government that there are significant portions of Vasquez's proffered testimony that are inadmissible. For example, unless the Government opens the door during its case-in-chief, Vasquez will not be permitted to testify about the application process for becoming a dealer or manufacturer of machine guns or ATF approval standards. (ECF 281-1, p. 6, middle paragraph.) According to his expert report, Vasquez intends to opine, among other things, that ATF must decide whether an applicant has willfully violated any provision of the Gun Control Act before it can issue a manufacturer's license, during which ATF applies "a standard that is less than the criminal standard of beyond a reasonable doubt." (Id.) The Court does not view this testimony as having any relevance to the issues in dispute; instead, it appears to be a backdoor method for Wendt to treat ATF's regulatory division as a sort of "mini-jury" that evaluated his conduct and decided he did nothing wrong. *See United States v. Wintermute*, 443 F.3d 993, 1001 (8th Cir. 2006) (excluding expert testimony that agency took no action despite learning facts about allegedly false statements because the proffered testimony was based on a misunderstanding of the government's burden). This is not an appropriate subject for expert testimony because there are significant differences between an application for a manufacturer's license (which is not the subject of any charges) and requests for approval of transfers of machine guns through purchase law letters and demonstration letters (which are the subject of charges). Moreover, there is a distinction between the ATF regulatory team that reviews

licensure applications and the ATF criminal team that was responsible for investigating Wendt for potential criminal violations. The latter had full access to grand jury information, while the former did not. Finally, Wendt's desire to make an issue out of the approval of the manufacturer's license ignores the fact that, with one exception that does not involve false statements (renumbered Count 15), Wendt was not charged with violating the Gun Control Act, and thus any conclusion the ATF regulatory division might reach about his compliance with that Act is materially different from the conclusion the jury will have to reach about whether Wendt violated 18 U.S.C. §§ 371 and 1001(a). *See United States v. Blumeyer*, 114 F.3d 758, 770 (8th Cir. 1997) (upholding the exclusion of judicial fact finding in a parallel civil proceeding because the evidence was irrelevant and was "likely to confuse the jury"). In these circumstances, allowing Vasquez to testify about the manufacturer's license will lead to a distracting and irrelevant mini-trial about what the ATF regulatory team knew or did not know about the criminal investigation and how the Gun Control Act is different from the regulations governing the transfer of machine guns. *See United States v. Klaphake*, 64 F.3d 435, 438 (8th Cir. 1995) (upholding exclusion of expert testimony on "matters not directly at issue" that "could have diverted the jury's attention" from defendant's guilt or innocence). It would do this for the purpose of setting up expert testimony that is misleading anyway: that ATF "evaluated" Wendt's conduct and concluded he did nothing wrong. *See United States v. Davis*, 471 F.3d 783, 789 (7th Cir. 2006) ("Experts are permitted to testify regarding how their government agency applies rules as long as the testimony does not incorrectly state the law or opine on certain ultimate legal issues in the case.").

Importantly, nothing about this aspect of the Court's ruling will prevent Wendt from presenting evidence and argument about the significance of ATF's approval of Wendt's requests to obtain and transfer machine guns through purchase law letters and demonstration letters. Wendt intends to argue that he made full and accurate disclosures in connection with those requests about, among other things, the size of the Adair Police Department and the intended use of the machine guns. He will have the full opportunity to argue this position. He simply will not be allowed to present expert testimony from Vasquez that ATF also approved a different application involving a different type of license unless the Government opens the door to such testimony during its own case-in-chief.

The Court also will not permit Vasquez to testify about the level of authority possessed by a chief of police to act on behalf of a local law enforcement agency, as summarized in the first full

paragraph of page 8 and the last sentence of page 9 of his report. (ECF 281-1, pp. 8, 9.) The level of authority possessed by a police chief will vary by jurisdiction and must be established as to Wendt and the City of Adair through fact witnesses, not expert witnesses. *See Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1334 (11th Cir. 1988) (considering witness testimony about police department practices under Fed. R. Evid. 701).

The Court further concludes that substantial portions of Vasquez's testimony are inadmissible because they: (a) purport to state what the law is in situations where the jury needs no additional information beyond what the Court will provide in the jury instructions; (b) misstate the law; and/or (c) opine that Wendt literally could not have violated the law based on how Vasquez interprets the governing statutes and regulations. Specifically—and unless the Government opens the door during its case-in-chief—Vasquez will not be permitted to testify to the topics identified in the first, third, and fourth paragraphs of page 10 of his report (ECF 281-1, p. 10). In those paragraphs, Vasquez purports to summarize the interplay between the federal statute (18 U.S.C. § 922(o)) and regulations (27 C.F.R. 479.105) governing "demonstrations" of machine guns; whether a law enforcement agency or firearms dealer must "certify" anything about "potential future sales" of a machine gun that is obtained for "demonstration" purposes; and whether ATF has the authority to deny an application for machine gun transfer when the police chief of a local law enforcement agency confirms that an FFL-SOT has been authorized to acquire a machine gun.

The first problem with Vasquez's proffered testimony on these topics is that it involves his personal interpretation of the relevant statutes and regulations. The is a subject for the Court to address in jury instructions, not for expert opinion testimony. *See Police Ret. Sys. of St. Louis v. Midwest Inv. Advisory Serv., Inc.*, 940 F.2d 351, 357 (8th Cir. 1991) ("Explaining the law is the judge's job."). Moreover, the Court disagrees with Vasquez's interpretation of the statutes and regulations. His view appears to be that a local police chief per se cannot make a "false statement" in a demonstration law letter because if the police chief says his agency is interested in seeing a demonstration of a machine gun, it is ipso facto true. This is not an accurate interpretation of the law. *See Kelerchian*, 937 F.3d at 908 (affirming defendant's conviction on conspiracy charge involving false demonstration requests made by Deputy Chief of Sheriff's Department).

Stated differently, Vasquez essentially wants to testify that Wendt could not, as a matter of law, have committed the crime of making false statements to ATF through the use of demonstration law letters because Wendt's position as Police Chief for the Adair Police Department gave him

unilateral authority to decide what the Adair Police Department was "interested" in seeing. To the extent this argument is viable—which it isn't—it must be made in the form of a motion to dismiss directed to the Court, not expert opinion testimony directed to the jury. *See S. Pine Helicopters, Inc.*, 320 F.3d at 841 (expert testimony on "whether federal law was contravened" is inadmissible).

Other aspects of Vasquez's proposed testimony are similarly inadmissible. In the second paragraph of page 11 of his report, he proposes to explain that the terms "official use" and "official duties and responsibilities" as used in governing regulations are terms of art that simply mean "the machine gun is going to be registered to a law enforcement agency." (ECF 281-1, p. 11.) He further wants to testify that ATF "may not second guess the law enforcement agency's use of the machine gun." (Id.) Again, these are not accurate summaries of the law. As used in 27 C.F.R. § 479.105(c), "official use" does not simply mean that the machine gun is going to be *registered* to a law enforcement agency, but also that the machine gun is genuinely for the *official use* of that agency. In other words, an official cannot claim to be acquiring a machine gun for the use of a local police department if the official actually wants to acquire the machine gun for his own personal reasons. *See Theunick*, 651 F.3d at 586. By suggesting otherwise, Vasquez will confuse and mislead the jury in an impermissible way. *See Wintermute*, 443 F.3d at 1001; *see also United States v. Rothenberg*, 328 F. App'x 897, 902 (5th Cir. 2009) ("[O]pinion testimony about 'what the law is' or some expert's 'understanding' about what the law means is inadmissible.").

Vasquez's testimony is also inadmissible insofar as he wants to describe "ATF's positions regarding the extent to which registered owners of machineguns are permitted to allow others to fire them and machineguns shoots and rentals, including their existence and popularity, common practices, and the ATF's position regarding them." (ECF 281-1, pp. 11–12.) The same is true for the remainder of Vasquez's proposed testimony regarding machine gun shoots, as summarized in pages 12 and 13 of his report. (Id., pp. 12–13.) Assuming for sake of argument that Vasquez's report is accurate and ATF's position indeed "has always been that the registered owner is not violating the law so long as the registered owner [of a machine gun] or his representative continues to exert control over the situation" (id., p. 12), this is irrelevant. It is the jury, not ATF, that is ultimately responsible for deciding what conduct "violat[es] the law" with the benefit of instructions from the Court. *See United States v. Smith*, 573 F.3d 639, 655 (8th Cir. 2009) (holding "it is the judge and not a witness" that instructs on the law). Vasquez's proposed testimony violates this core principle by suggesting that a defendant should not be convicted of an offense if a federal

agency did something to suggest the conduct in question was legal. This is impermissible in the circumstances presented here. To that end, it is important to note that Vasquez's testimony about machine gun shoots does not relate to the conspiracy to defraud and false statement charges. In some circumstances, testimony about an agency's custom and practices might be relevant to *those* types of charges because the testimony would help the jury understand the element of materiality. As it relates to machine gun shoots, however, materiality is irrelevant. Accordingly, Vasquez simply wants to use ATF's putative "positions" on machine gun shoots as a form of argument for jury nullification. This is improper.

Finally, the Court will not allow Vasquez to offer opinion testimony about the "documents responsive to the defense discovery requests that have not been produced in this case" or the "guidance that appears to be missing from discovery," as stated in the first full paragraph of page 14 of his report. (ECF 281-1, p. 14.) Vasquez does not explain the "guidance" to which he is referring, nor has Wendt explained the relevance of any such "guidance." This is reason enough to exclude the testimony. *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th at 777 (testimony must be relevant). Moreover, given the other verboten topics in Vasquez's expert report, the Court is concerned that Vasquez intends to opine that ATF has provided unidentified "guidance" indicating that certain conduct is "legal" or "does not violate the law" irrespective of what governing statutes and regulations say. Neither ATF nor Vasquez is entitled to encourage the jury to accept their own interpretations of the law; instead, the Court will explain what the law does and does not permit.

In sum—and, again, absent the Government opening the door—Vasquez will not be permitted to testify about the matters set forth in the following sections of his report: (a) the second paragraph of page 6; (b) the last sentence of the carryover paragraph starting on page 7 and ending on page 8; (c) the first full paragraph of page 8; (d) the last sentence of page 9; (e) the first, third, and fourth paragraphs of page 10; (f) the second full paragraph of page 11; (g) the carryover paragraph starting on page 11 and ending on page 12; (h) the entirety of page 12; (i) the first two paragraphs of page 13; and (j) the first full paragraph of page 14.

There are a few areas of Vasquez's proposed testimony for which the Court cannot make a definitive ruling as to admissibility. For example, in the second paragraph of page 10, Vasquez proposes to offer testimony about ATF's "position" on what a demonstration of a machine gun might entail. The Court will need to see how the Government presents its case-in-chief before it

can decide whether this is an appropriate subject. In addition, Vasquez will have to establish that he has sufficient foundation to offer testimony about it.

In the last two paragraphs of page 8 (the second of which carries over to page 9) (ECF 281-1, pp. 8, 9), Vasquez's report says he will offer testimony about how ATF examiners review applications and what information an ATF examiner would have had with respect to Wendt's applications. As written, the report appears to simply summarize facts and therefore is likely to be admissible, if not terribly meaningful. In context, however, Vasquez appears to be implying that the allegedly false statements made by Wendt must not have been "material" because ATF knew how many machine guns the Adair Police Department already possessed but approved additional machine gun transfers anyway. Under well-established precedent from the Eighth Circuit and other federal appellate courts, such testimony may rest on a misleading and inaccurate definition of "material."

*United States v. Wintermute* is illustrative. 443 F.3d 993. There, the defendant was charged with conspiracy to defraud the United States and making false statements to the Office of the Comptroller of the Currency ("OCC"). *Id.* at 996. As part of her defense, the defendant proffered testimony from the former chief counsel of the OCC, who intended to testify that the allegedly false statements must not have been "material" given the OCC's failure to take certain action once it was fully informed of the facts. *Id.* at 1001 & n.2. The Eighth Circuit affirmed the district court's decision to exclude the witness from testifying, holding that the "proffered testimony misrepresented the government's burden of proving materiality" and "misconstrue[ed] the legal question at issue." *Id.* at 1001. The proper question, *Wintermute* explained, was whether the "false statements were *capable* of influencing the OCC's decision," not whether they "actually *succeeded* in influencing the OCC, or influenced that decision within any specific period of time." *Id.*; *accord, e.g.*, *United States v. Benton*, 890 F.3d 697, 712 (8th Cir. 2018) ("A false statement is material if it has a natural tendency to influence or was capable of influencing the government agency or official to which it was addressed."), *judgment corrected* (May 15, 2018). "If offered, the expert testimony would have served to confuse rather than assist the jury in the jury's attempt to understand the evidence on this issue." *Wintermute*, 443 F.3d at 1001; *see also Benton*, 890 F.3d at 712 (affirming false statement conviction despite defendants' argument that the false statements did not change the government entity's action).

The Sixth Circuit reached a similar conclusion in *United States v. Gordon* in the context of a prosecution for bank and tax fraud. 493 F. App'x 617, 626–27 (6th Cir. 2012). The district court refused to permit the defendant to call IRS employees to testify about what the IRS would consider "material" and whether the IRS would have taken the same action even without the false statement. *Id.* at 626. The Sixth Circuit affirmed because the testimony "essentially sought to introduce legal conclusions about materiality in the guise of expert testimony" and was "not probative of whether Gordon's statements were material" under the correct legal definition of the word "material." *Id.* at 626–27; *see also id.* at 628 ("It is not necessary to show that the statement actually influenced an agency, but only that it had the capacity to do so. Whether the IRS would have [taken the same action] does not determine materiality." (internal citation omitted)).

The same principles apply here. It is "unlawful for any person" other than (as relevant here) a local law enforcement agency or FFL-SOT "to transfer or possess a machine gun," 18 U.S.C. § 922(o), and ATF is forbidden from approving an application for the transfer or possession of a machine gun "if the transfer, receipt, or possession of the firearm would place the transferee in violation of law," 26 U.S.C. § 5812(a). In other words, ATF cannot lawfully approve an application for a machine gun transfer if the gun: (a) will not be for the official use of a local law enforcement agency; and (b) is not of interest to the local law enforcement agency for possible purchase. It follows that the fact that ATF approved any particular application or the amount of information ATF had about the Adair Police Department or Wendt's businesses at the time of such approval does not mean statements regarding the local law enforcement agency's interest or intended use of the machine guns are not material. The Court will not allow Wendt to use expert testimony to argue otherwise.

The Court likewise will reserve ruling on other aspects of Vasquez's testimony. On pages 11 and 13 of his report, Vasquez proposes to offer testimony on the "types and uses of the machineguns involved in this case," "the existence of these machineguns in the possession of law enforcement and/or FFL-SOTs," "the existence of machineguns in the possession of private companies/individuals and law enforcement; and the machineguns that have been acquired by law enforcement." (ECF 281-1, pp. 11, 13.) The Court does not have sufficient detail or context to evaluate the admissibility of this evidence, although it suspects it will be admissible given that the Government apparently intends to offer evidence and argument that Wendt must not have intended for the machine guns to be used by the Adair Police Department given the small size of that

Department. If so, Wendt will be allowed in his defense to rebut the Government's position by pointing out the number of machine guns possessed by other, similarly sized law enforcement agencies. Such testimony is particularly likely to be admitted if the defense presents evidence that Wendt was aware of such possession by these other agencies, as this would indicate his genuine belief in the Adair Police Department's need for machine guns either for purchase or demonstration purposes.

Finally, the Court reiterates that its ruling on the permissible boundaries of Vasquez's testimony may change if, for instance, the Government's expert covers ground the Court was not expecting or that might itself exceed the boundaries the Court has summarized above. If so, it would only be fair to allow Vasquez to rebut the Government's evidence. The Court will make this evaluation during trial when it has greater context.

## V.   ANALYSIS: WENDT'S MOTIONS IN LIMINE.

Turning to the motions in limine, most involve issues that do not appear to be in serious dispute. Each side simply wants to ensure the other side follows the Federal Rules of Evidence or other governing legal principles. Nonetheless, in the interest of clarity, the Court will evaluate each request made by each side.

### A.   The Court Grants in Part and Denies in Part Wendt's Motion in Limine No. 1 ("Jury Emotions, Fear, Danger of Guns, and Politics").

Wendt asks the Court to prevent the Government from presenting "any evidence, testimony, or argument with the intention or effect of appealing to the jury's emotions, fear, danger of guns, or politics." (ECF 296, p. 1.) More specifically, he asks the Court to exclude evidence of the power or danger of machine guns, speculation about how such guns might be used, political symbols like "the Trump flag," and any suggestion about what might happen if machine guns "end[] up in the wrong hands." (Id., pp. 1–2.) The Court generally agrees that the Government should not be permitted to inject fear, danger, or politics into the case and therefore GRANTS IN PART Motion in Limine No. 1.[3]

---

[3] Relatedly, the Court DENIES WITHOUT PREJUDICE Wendt's Motion Regarding the Admission of Audio and Video Evidence at Trial. (ECF 297.) The Government indicates that it does not plan to offer audio recordings of Wendt's statements but does plan to offer three videos from the machine gun shoot that forms for the basis for renumbered Count 15 and a marketing video promoting a minigun at issue in the case. Without additional context, the Court will wait until trial to rule on the admissibility of these and other audio or video recordings, any portion thereof, or the production of transcripts related thereto.

The Court DENIES IN PART Motion in Limine No. 1 in a few respects. The Government will not be prohibited from offering brief testimony or evidence explaining why machine guns are regulated so heavily even if such testimony states or implies that such weapons are dangerous, provided that the Government does not dwell on the issue of dangerousness or otherwise attempt to appeal to jurors' emotions. In addition, the Government will be permitted to offer photographs of the machine guns and/or the machine guns themselves into evidence, notwithstanding the possibility that a juror might find the guns threatening or intimidating. The Government will not, however, be permitted to have the machine guns in the courtroom everyday throughout the trial. Finally, to the extent evidence of dangerousness or political symbols are inextricably intertwined with evidence that is admissible for other reasons—such as, for example, if video footage captures Wendt making statements about the power of a machine gun or shows a Trump flag at the scene of the machine gun shoot at issue in renumbered Count 15—the evidence will not be excluded.

### B. The Court Denies Without Prejudice Wendt's Motion in Limine No. 2 ("Exculpatory, Impeachment, or Prior Statements Discovery").

Wendt next asks the Court to prohibit the Government from introducing "any evidence where relevant exculpatory, impeachment, and prior statement discovery has not been produced." (Id., p. 3.) He suggests, among other things, that the Government has improperly withheld discoverable information regarding law letter approvals and ATF practices, interpretations, and guidance "different from that portrayed in this case" as well as "[o]ther ATF actions that would support positions contrary to the positions taken by the Government in this case." (Id., pp. 3–4.)

For the most part, this is not a true motion in limine, and thus the Court DENIES it. Wendt is instead reiterating complaints about the discovery process. For reasons explained above, these complaints largely emanate from Wendt's interpretation of the relevant legal issues in the case, including the definition of "materiality" and whether it is for ATF (as opposed to the jury) to decide whether the Government has satisfied the elements of the offense. The denial is, however, without prejudice so that Wendt can raise objections at trial if the Government truly attempts to introduce evidence that was withheld from discovery in violation of *Giglio v. United States*, 405 U.S. 150 (1972) or the Jencks Act, 18 U.S.C. § 3500.

### C. The Court Grants Wendt's Motion in Limine No. 3 ("Character Evidence or Evidence of Other Crimes, Wrongs, or Acts").

Wendt asks the Court to exclude any prior bad acts evidence that the Government might offer pursuant to Fed. R. Evid. 404(b). (ECF 296, p. 4.) The Government reports that it does not

intend to present prior bad acts evidence (ECF 299, p. 2), and thus Motion in Limine No. 3 is GRANTED.

> **D. The Court Denies Without Prejudice Wendt's Motion in Limine No. 4 ("Statements by Third Parties or Alleged Co-Conspirators").**

Wendt asks the Court to exclude hearsay statements by third parties or alleged co-conspirators. (ECF 296, p. 5.) The Court cannot, however, rule on such a motion in a vacuum. Some statements by third parties are admissible for non-hearsay purposes, such as to provide context for statements made by Wendt. Similarly, co-conspirator statements are admissible pursuant to Fed. R. Evid. 801(d)(2)(E) if made "during and in furtherance of the conspiracy." As Wendt has not identified any particular statement he wants to have excluded, the Court must DENY WITHOUT PREJUDICE Motion in Limine No. 4. Wendt may object at trial if he believes the Government is offering inadmissible hearsay.

> **E. The Court Denies Without Prejudice Wendt's Motion in Limine No. 5 ("Completeness of Wendt's Statements").**

The Court likewise does not have sufficient context to evaluate Wendt's request to have his statements admitted in their entirety pursuant to Fed. R. Evid. 106, which is often called the "rule of completeness." (ECF 296, p. 5.)  If and when the Government offers one of Wendt's statements into evidence, the Court can evaluate whether there are other portions of the same statement "that in fairness ought to be considered at the same time." *See* Fed. R. Evid. 106. Until then, Wendt's Motion in Limine No. 5 is DENIED WITHOUT PREJUDICE.

> **F. The Court Denies Without Prejudice Wendt's Motion in Limine No. 6 ("Testimonial Statements in Violation of _Crawford_ & the Confrontation Clause").**

The Court also DENIES WITHOUT PREJUDICE Wendt's Motion in Limine No. 6, which asks for the exclusion of testimonial statements pursuant to the Sixth Amendment and *Crawford v. Washington*, 541 U.S. 36 (2004). (ECF 296, p. 6.) As with many other aspects of his Motions in Limine, Wendt does not identify any particular statements that might trigger *Crawford*; instead, he simply generically asks for the exclusion of such statements. The Court cannot provide relief—or even useful guidance—without more context.

> **G. The Court Grants in Part and Denies in Part Wendt's Motion in Limine No. 7 ("Authority of the ATF to Define Terms, Unlawful Interpretations of the Law, and Unlawful Practice by ATF").**

Wendt's Motion in Limine No. 7 identifies an issue that is important for both sides: the possible introduction of testimony and evidence regarding the interpretation of governing laws and

regulations. (Id.) As explained above in connection with the Government's Motion to Exclude, the Court expects the parties to adhere to the following principles: (i) both sides will be permitted, to some degree, to explain the legal backdrop against which ATF regulates machine guns, including, e.g., basic information about who is permitted to possess or transfer machine guns, how the regulatory process works, which documents must be filed and for what purpose, and similar issues; (ii) neither side will be permitted to offer testimony, evidence, or argument stating or suggesting that the law is something different than it is; and (iii) neither side will be permitted to offer testimony directly stating whether something Wendt or ATF did (or failed to do) is "legal" or "illegal" or words to similar effect, such as "violates the law." Wendt's Motion in Limine No. 7 is GRANTED IN PART to the extent it asks for adherence to these principles and is DENIED IN PART to the extent it is asking for something different.

### H. The Court Denies Without Prejudice Wendt's Motion in Limine No. 8 ("Amendment of or Variance from the Indictment").

Wendt's Motion in Limine No. 8 seeks to preclude the Government from constructively amending or impermissibly varying from the Indictment. (ECF 296, p. 7.) For the most part, this topic is better addressed in connection with jury instructions and post-trial motions than as a motion in limine. Moreover, the relief Wendt seeks is sometimes not tethered to governing Eighth Circuit precedent regarding constructive amendments and variances. For example, he asks the Court to prevent the Government from attempting to rely upon "[a]ny notion that somehow the ATF did not have the ability to make inquiries of Wendt, the Adair City Council, or others in making its determinations." (Id., p. 8.) The Court does not understand how this might constitute a constructive amendment or variance from the Indictment. The Court therefore DENIES Wendt's Motion in Limine No. 8.

### I. The Court Denies Wendt's Motion in Limine No. 9 ("Limits on Conspiracy Charge").

Wendt's Motion in Limine No. 9 contains four subparts, none of which are true motions in limine. First, he argues that "the conspiracy charge runs afoul of the protections afforded in the Gun Control Act." (Id.) Other than quoting a statute, however, he provides no legal authority or argument to help the Court understand what he is alleging. Moreover, and in any event, this is an appropriate topic for a motion to dismiss or post-trial motion, not a motion in limine.

Second, Wendt argues that the conspiracy to defraud the ATF charge is too vague. For reasons explained in detail above, the Court would reject this argument if it were presented as a motion to dismiss. There is nothing impermissibly vague about laws limiting the possession of

machine guns to governmental entities, nor about a regulatory regime in which information must be provided to ATF to confirm that a governmental entity either intends to purchase such a weapon or, at minimum, is genuinely interested in a demonstration of such a weapon. *See Theunick*, 651 F.3d at 585–86 (rejecting vagueness challenge); *Kelerchian*, 937 F.3d at 907–08 (affirming conviction based on defendant's use of false statements in demonstration law letters).

Third, Wendt argues that there is "danger of confusion" if the Government pursues a conviction based on both prongs of the conspiracy to defraud statute, 18 U.S.C. § 371. There is nothing improper, however, about the Government's decision to charge conspiracy in the alternative in Count 1. *See United States v. Fletcher*, 322 F.3d 508, 519 (8th Cir. 2003); *United States v. Derezinski*, 945 F.2d 1006, 1010 (8th Cir. 1991) At most, the Court and parties simply must ensure the jury instructions require unanimity as to which prong of section 371 (if either) the jury believes the Government has proven beyond a reasonable doubt. In addition, the Court will give Wendt greater latitude to present evidence in defense of the conspiracy charge to the extent it is not based on false statements.

Fourth, and similarly, jury instructions will protect against Wendt's concern that the jury might be confused by "the possibility of multiple conspiracies." (ECF 296, pp. 9–10.) The Court is willing to give the multiple conspiracy instruction if the evidence at trial so warrants; for now, there is nothing that needs to be handled in a motion in limine.

For these reasons, the Court DENIES Wendt's Motion in Limine No. 9.

*J.   The Court Denies Wendt's Motion in Limine No. 10 ("Vagueness").*

Like his Motion in Limine No. 9, the vagueness argument in Wendt's Motion in Limine No. 10 is better understood as a motion to dismiss than a motion in limine. (Id., p. 10.) The Court reiterates that the governing statutes and regulations are not impermissibly vague. To the contrary, the regulatory regime is straightforward. ATF cannot approve the transfer of machine guns unless they are going to be used by—or demonstrated for—governmental entities. ATF therefore requires, consistent with governing statutes, the submission of documents confirming that (in this instance) the Adair Police Department was either purchasing the weapons for its own "official use" or was genuinely interested in the weapons and therefore wanted an FFL-SOT to obtain them for demonstration purposes.

Relatedly, Wendt argues that the Government is seeking to impose "ambiguous" requirements. The Court cannot understand, however, which statutory or regulatory provisions he

contends are ambiguous or why, nor does his citation to *United States v. Johnson*, 937 F.2d 392, 399 (8th Cir. 1991) provide clarity. In *Johnson*, the defendant parroted back to the government the same ambiguous language the government gave to him in the first instance, and thus the Eighth Circuit reversed his conviction. *See id.* at 399 ("Having relied on the government's directives, Johnson cannot now be found guilty of making a material false statement. . . ."). More recent Eighth Circuit cases confirm that the issue of ambiguity arises in fraud cases only when the allegedly false statements are "facially ambiguous" or "subject to multiple reasonable interpretations." *United States v. Parker*, 364 F.3d 934, 945 (8th Cir. 2004). In such circumstances, "the government bears the burden of negating literally truthful interpretations of statements in a fraud case." *Id.*

Here, Wendt does not appear to be claiming that his *own* statements are ambiguous. Rather, he complains that the governing regulations are ambiguous. It follows that cases like *Johnson* and *Parker* are not on point. Instead, the predominant issue is what the Sixth Circuit described in *Theunick*: "whether [Wendt] used the authority of [his] office[] as a pretext for the personal use of automatic weapons." 651 F.3d at 586; *see also, e.g.*, *United States v. Huntsman*, 959 F.2d 1429, 1437 (8th Cir. 1992) (holding that defendants were properly convicted of making false statements when they misrepresented their intentions as to the use of their farmland). If the Government can convince a jury beyond a reasonable doubt that Wendt made false statements when he submitted documents to ATF stating that the Adair Police Department was purchasing weapons for its own "official use" or was interested in them for demonstration purposes, Wendt will be guilty of the charges. If the Government cannot convince a jury of this—if, for example, Wendt creates a reasonable doubt about whether the statements in question were true—he will be not guilty of the charges. Either way, there is nothing for the Court to do through a ruling in limine, and thus the Court DENIES Wendt's Motion in Limine No. 10 as it relates to the false statement charges.

The Court also DENIES Wendt's Motion in Limine No. 10 as it relates to the renumbered Count 15, which charges him with illegally possessing or aiding and abetting the illegal possession of a machine gun. (ECF 296, p. 11.) The Court explained in a prior ruling why it did not believe *United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006) invalidated the charge against Wendt. (ECF 260, pp. 13–14.) The Court stands by its prior analysis.

Finally, the Court DENIES Wendt's Motion in Limine No. 10 as it relates to his argument that he is somehow protected from the charges against him by qualified immunity. (ECF 296, p.

12.) Again, the Court rejected this argument in its prior ruling and stands by the prior analysis. (ECF 260, p. 13.)

## VI.   ANALYSIS: GOVERNMENT'S MOTIONS IN LIMINE.

### A.   *The Court Grants Government Motion in Limine No. 1 (Evidence or Argument of ATF's Approval of BW Outfitters's Application for License to Manufacture Firearms).*

Government Motion in Limine No. 1 arises out of the following facts. (ECF 288, pp. 2–5.) On June 3, 2022, BW Outfitters applied for a Type 07 license to manufacture firearms in accordance with 27 C.F.R. § 478.47. (Id., p. 3.) By statute, applicants qualify for a manufacturer's license if they are at least twenty-one years old, are not prohibited under the Gun Control Act, have not "willfully violated" the Gun Control Act, have not made false statements or willfully failed to disclose material information in connection with the application, and have a valid business premises. *See* 18 U.S.C. § 923(d)(1); 27 C.F.R. § 478.47(b). Federal regulations state that ATF "shall approve a properly executed application" if these requirements are satisfied. 27 C.F.R. § 478.47(b). BW Outfitters's application was finalized on October 11, 2022, thus triggering an obligation on ATF's part to act on the application within sixty days. (ECF 288, p. 3.) ATF approved the application on November 16, 2022. (Id.) This was approximately one month before the grand jury returned the indictment against Wendt on December 14, 2022.

The Government submitted a declaration from William Miller, the Director of Industry Operations for the ATF's Kansas City Field Division ("KCFD"), to provide more context for how BW Outfitters's application for a manufacturing license moved through the approval process. (ECF 288-1, ¶¶ 2–3.) The KCFD covers the Southern District of Iowa and, as the director, Miller is "required to approve applications for a Federal firearms license[] absent evidence" the applicant is not qualified under 27 C.F.R. § 478.47. (Id., ¶ 3.) The Federal Firearms Licensing Center forwarded BW Outfitters's application for a Type 07 license to the KCFD on June 22, 2022. (Id., ¶ 8.) Miller was "generally aware" of the ongoing criminal investigation into Wendt's activities, but neither he nor any members of his Industry Operations staff were on the disclosure list for grand jury information (i.e., the "Rule 6(e) list"). (Id., ¶ 9.) Miller therefore did not know what specific evidence was obtained during the criminal investigation. (Id.) He directed that BW Outfitters's license should be approved because he was aware of "no disclosable basis" that would have permitted denial. (Id., ¶ 10.)

The Government argues that Wendt should be precluded under Fed. R. Evid. 403 from presenting evidence of ATF's approval of his manufacturer's license. Wendt, by contrast, argues that the license approval is highly relevant because, in his view, it means ATF concluded just one month before his indictment that he had not willfully violated the Gun Control Act. In Wendt's words, ATF "determin[ed] that Wendt did not do what the Government claims he did." (ECF 295, p. 2.) For three reasons, the Court agrees with the Government and will exclude evidence and argument regarding ATF's decision to approve BW Outfitters's application for a manufacturer's license.

First, it is not for ATF—or any other witness or entity—to say whether Wendt violated the law. *See Warger v. Shauers*, 721 F.3d 606, 612–13 (8th Cir. 2013) (affirming district court's exclusion of expert testimony regarding whether either of the drivers in a car accident violated state law); *see also United States v. Robinson*, 255 F. Supp. 3d 199, 206 (D.D.C. 2017) (precluding witness from testifying that the defendant's conduct was "criminal" or "illegal" or that he "violated the Controlled Substances Act"); *United States v. Okoroji*, No. 3:15-CR-00559-0, 2018 WL 8756434, at *1 (N.D. Tex. June 12, 2018) ("Accordingly, while an expert may explain a complicated area of the law and the facts related to it, he may not conclude that a defendant violated the law."). Thus, even if ATF's approval of the manufacturer's license application is properly interpreted as a determination by the agency that Wendt did not violate the Gun Control Act in connection with his acquisition of machine guns between 2018 and 2022, evidence of this determination would not be admissible. *See id.*

Second, and relatedly, Wendt does little to explain why ATF's approval of the manufacturer's license application is relevant to whether he committed each element of the charged offenses. Instead, he argues broadly that the fact of the approval "undercuts" the Government's allegations and amounts to an admission by ATF that it was not defrauded. (ECF 295, p. 3.) The closest he comes to mentioning elements of the offenses is when he characterizes the case as being "about what the ATF regulatory side considered to be false statements and material statements versus what the Government now claims." (Id.) In other words, to the extent Wendt is tying the license approval to the elements of the offense at all, his argument appears to be that ATF's decision to approve the license in November 2022 helps show that his statements on other applications in prior months and years were either not false or not material.

The Eighth Circuit addressed a similar issue in *Wintermute*. There, the defendant's expert intended to testify that allegedly false statements to the OCC must not have been material because "the OCC took no action after learning the facts more fully." 443 F.3d at 1001 & n.2. The Eighth Circuit affirmed the district court's decision to exclude such testimony, concluding that it "presents an erroneous understanding of section 1001's materiality element. As previously stated, to prove materiality, the government needed to show only the false statements were *capable* of influencing the OCC's decision. The government was not required to prove the false statements actually *succeeded* in influencing the OCC, or influenced that decision within any specific period of time." *Id.* at 1001. The same conclusion is appropriate here. Whether ATF approved the manufacturer's license application in November 2022 is not relevant to whether Wendt's statements to ATF in other applications in prior months and years were "*capable* of influencing" ATF's decisions regarding the transfer of machine guns. *Id.* As the Seventh Circuit has explained, "there is no requirement that the statement must in fact influence the decisionmaker (that would be reliance)." *United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999); *see also United States v. Yoon*, 128 F.3d 515, 525 (7th Cir. 1997) (rejecting defendant's argument in bank kiting case that "because the banks' officers testified that they knew the Yoons were bouncing checks, the banks were alerted to this conduct and were not actually defrauded").

Third, and in any event, ATF's approval of the manufacturer's license application for BW Outfitters is not equivalent to a determination by ATF that Wendt had not violated the Gun Control Act, much less that he had not violated 18 U.S.C. §§ 371 and 1001, neither of which are part of the Gun Control Act. As the Miller declaration explains, ATF's regulatory branch did not have access to the details of the grand jury investigation and therefore had, at most, incomplete information regarding Wendt's conduct. If the Court nonetheless allowed Wendt to present evidence and argument regarding the significance of ATF's decision to approve the manufacturer's license, the Court would have to hold a distracting and time consuming trial-within-the-trial on the overlap (if any) between the ATF regulatory team responsible for the license application and the ATF criminal team responsible for the criminal investigation, the extent to which information was (or even could be) shared between the two teams, the extent of ATF's authority to deny an application for a manufacturer's license when a criminal investigation is pending, the extent to which potential criminal conduct by Wendt would be attributable to BW Outfitters, and the difference between the Gun Control Act and the conspiracy (18 U.S.C. § 371) and false statement

26

(18 U.S.C. § 1001) statutes Wendt is accused of having violated. And all for the purpose of deciding whether ATF's actions in approving a manufacturer's license should be interpreted to mean something that no ATF witness would be allowed to testify about anyway: whether Wendt violated the law in connection with his separate applications to transfer machine guns. To the extent there is any minimal probative value in these circumstances from the fact that ATF approved the manufacturer's license application, it is more than substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403; *see also United States v. Stull*, 743 F.2d 439, 445 (6th Cir. 1984) ("Here the potential confusion engendered by lengthy testimony about an administrative action (which the defendants knew did not preclude criminal penalties) was properly avoided."); *United States v. Murgio*, No. 15-CR-769(AJN), 2017 WL 365496, at *16 (S.D.N.Y. Jan. 20, 2017) (finding the risk of prejudice under Rule 403 "particularly clear" where government sought to introduce document that "does little more than inform the jury that an independent governmental agency, reviewing the same evidence that the jury must review, has concluded that [defendant] is guilty of the charges in the Indictment").

For these reasons, the Court GRANTS Government Motion in Limine No. 1 and will exclude evidence and argument regarding ATF's approval of BW Outfitters's application for a manufacturer's license in November 2022.

*B. The Court Grants in Part and Denies in Part Government Motion in Limine No. 2 (Evidence or Argument Regarding Public Authority /Entrapment by Estoppel Defense).*

The Eighth Circuit has "recognized three defenses based on perceived government authority: public authority, entrapment by estoppel, and innocent intent." *United States v. Xiong*, 914 F.3d 1154, 1159 (8th Cir. 2019). "'Public authority' has been described as an affirmative defense where the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in covert activity." *Id.* "Entrapment by estoppel applies when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct." *Id.* (internal punctuation omitted). "Under the innocent intent defense, a defendant claims that he lacked criminal intent." *Id.* (internal punctuation omitted). "The public authority and entrapment by estoppel defenses require pretrial disclosures, including notice and a list of witnesses, under Federal Rule of Criminal Procedure 12.3." *Id.* at 1159–60.

The Government appears to misunderstand Fed. R. Crim. P. 12.3 as it relates to possible testimony from City of Adair officials that they approved Wendt's acquisition of machine guns.

Such testimony is not part of a "public authority" defense as that phrase is used in Fed. R. Crim. P. 12.3, which focuses instead on whether a member of law enforcement somehow ensured a defendant that he would not be prosecuted for what would otherwise be unlawful conduct. Wendt will be allowed to present testimony and evidence from City of Adair officials that he was appointed as Police Chief, the responsibilities that come with that position, and the extent to which they knew about or approved his acquisition of machine guns. Such testimony does not constitute a "public authority" defense for purposes of Fed. R. Crim. P. 12.3 but rather is relevant to whether Wendt was genuinely purchasing machine guns for the "official use" of the Adair Police Department and/or whether the Police Department had a genuine interest in "demonstrations" of such weapons. To the extent Government Motion in Limine No. 2 is designed to cut off such testimony, it is DENIED.

Government Motion in Limine No. 2 fares better on the issue of entrapment by estoppel. Wendt argues, vaguely, that ATF "approved of the conduct the Government has alleged in the Indictment with respect to Wendt" and that such approval "came from the personnel, including the ATF NFA Division, who communicated with Wendt; who otherwise acted with respect to the conduct alleged in the Indictment; and who provided communications and guidance to the public." (ECF 295, p. 3.) The Court cannot tell what this means. To the extent Wendt simply wants to present evidence that ATF approved his applications to transfer firearms, this is fair game. To the extent Wendt wants to present evidence that ATF approved the application from BW Outfitters for a manufacturer's license, the evidence is inadmissible for reasons explained in the preceding section. To the extent Wendt intends to present some other sort of evidence of entrapment by estoppel—such as evidence that an ATF employee told him what he was doing was ok—the Court will need to hear the testimony outside the presence of the jury before it can rule on admissibility. For such testimony to be admissible, Wendt will need to prove the ATF employee engaged in "affirmative misconduct" by giving him information that led Wendt to believe his conduct was legal. *United States v. Benning*, 248 F.3d 772, 775 (8th Cir. 2001). The Court doubts Wendt will be able to meet this burden, as it would require him to show that the ATF employee told him it was ok to make false statements in transfer application paperwork, which seems highly unlikely. *See United States v. Kieffer*, 621 F.3d 825, 833 (8th Cir. 2010) ("In order for his reliance to be reasonable, the defendant must establish that a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further

inquiries." (quoting *United States v. Treviño–Martinez*, 86 F.3d 65, 69 (5th Cir.1996)) (internal citation omitted)). Indeed, the Court does not even understand this to be part of Wendt's defense; instead, the Court understands Wendt's position to be that the machine guns were in fact for the "official use" of the Adair Police Department or for demonstration purposes for the Police Department. If so, his defense is that his statements were true, not that he was entrapped into making false statements. Consistent with this paragraph, the Court GRANTS IN PART and RESERVES RULING IN PART on Government Motion in Limine No. 2 as it relates to entrapment by estoppel.

### C. The Court Grants in Part and Denies in Part Government Motion in Limine No. 3 (Evidence of the City of Adair's Employment Decisions).

After Wendt was indicted, the City of Adair suspended him for some period of time before deciding to reinstate him to his position as Police Chief. Wendt argues that he should be permitted to present testimony and evidence regarding the reinstatement decision, as (in his view) it shows that he must not have exploited his position for personal gain. Wendt notes that "the City's decision to not discipline Wendt after its investigation was concluded was undertaken pursuant to a lower standard than proof beyond a reasonable doubt." (ECF 295, p. 6.)

For the most part, the Court agrees with the Government that this testimony and evidence is inadmissible. Wendt appears to regard the Adair City Council as a sort of "mini-jury" that evaluated the evidence against him and concluded he did nothing wrong. This is problematic from an evidentiary standpoint because, first, it usurps the role of the jury. Moreover, it is premised on a misleading characterization of relevant events. Based on the Court's review during earlier motion practice of recordings from City Council meetings, City officials had nothing remotely close to the full body of evidence against Wendt; in fact, the City Attorney complained about his inability to get information from the FBI or U.S. Attorney's Office. Moreover, even as to the limited universe of information the City possessed, there was disagreement among City officials regarding whether Wendt engaged in misconduct and, if so, if this warranted termination. At least one City Council member appeared to misunderstand the nature of the charges against Wendt and what evidence might be material to his guilt or innocence, while others purported not to know much about the underlying facts at all. To the extent there was "consensus" among those officials, it was: (a) the criminal justice system should determine Wendt's guilt or innocence; (b) pending that determination, their small Police Department needed someone to help the other full-time officer

who had been covering all the shifts; and (c) it made more sense to reinstate Wendt to perform that function than to undertake the time and resources necessary to hire someone else.

Against this backdrop, the Court would be opening the door to yet another trial-within-the-trial if it allowed Wendt to offer testimony and argument suggesting that the City of Adair's decision to reinstate him means he did nothing wrong. The Government would have to respond by pointing out through evidence and testimony that the reasons for the reinstatement varied among City officials and were either disconnected from the criminal justice process or based on a misunderstanding of the relevant legal and factual issues. In these circumstances, any probative value from the City's decision to reinstate Wendt is substantially outweighed by the risk of confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 403. Courts regularly hold that evidence from—and the outcome of—parallel proceedings has minimal relevance in criminal trials. *See, e.g.*, *United States v. Hager*, 879 F.3d 550, 556 (5th Cir. 2018) (upholding exclusion of defense expert testimony that sought to "discuss the prior [civil] lawsuit and compare it to the Government's present one," as there was "little insight" to be gained from company's previous civil defense that certain data was not propriety in fraud case where defendant was accused of using company's confidential information for personal gain).

To that end, it is worth reiterating that whether Wendt violated the law is a decision for the *jury* to make, not the Adair City Council. Thus, even if City officials were fully informed of the nature and circumstances surrounding the charges against Wendt, the opinion of those officials on whether he violated the law would be just as irrelevant and inadmissible as testimony from an expert witness or ATF agent on the same topic. The Court GRANTS IN PART Government Motion in Limine No. 3 insofar as it asks the Court to preclude Wendt from offering evidence or argument about the City's decision to reinstate him or that the decision is evidence that he did nothing wrong.

The Court DENIES IN PART Government Motion in Limine No. 3 insofar as it seeks to prevent Wendt from testifying or present evidence regarding: (a) the fact that he remains the Police Chief to this day; (b) the responsibilities that come with that position; and (c) whether and to what extent City officials approved or knew about his acquisition of machine guns. Those are all appropriate topics for the presentation of evidence and argument.

*D. The Court Grants Government Motion in Limine No. 4 (Selective Prosecution).*

Both sides agree that Wendt should not be allowed to present evidence or argument of selective prosecution in the sense that charges were brought against him for discriminatory reasons.

Wendt argues, however, that he should be permitted to testify that machine gun shoots are "common" and that "ATF believes they are legal." (ECF 295, p. 6.)

Unless Wendt can provide sufficient evidence to make the entrapment by estoppel defense viable, he will not be permitted to present evidence on these topics. As explained in multiple places above, it is for the Court to decide what the law allows, not ATF. ATF's putative "belief" that machine gun shoots are legal is therefore not an appropriate topic for testimony or argument except as part of an entrapment by estoppel defense for which Wendt must make a preliminary showing. *See Benning*, 248 F.3d at 775. Until and unless he makes this showing, Government Motion in Limine No. 4 is GRANTED.

E. *The Court Denies Without Prejudice Government Motion in Limine No. 5 (Business Records).*

Assuming proper certification, the Court is ready and willing to admit documents into evidence pursuant to the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6), 902(11). No foundational witness will be necessary. As the Government has not specifically identified the documents it believes are governed by the exception, however, the Court cannot grant any relief at this time. The Court instead DENIES WITHOUT PREJUDICE Government Motion in Limine No. 5.

F. *The Court Grants Government Motion in Limine No. 6 (Second Amendment).*

Although Wendt argued in a motion to dismiss that the charges against him violate the Second Amendment, both sides acknowledge this is not an appropriate topic for argument to the jury. The Court agrees and therefore GRANTS Government Motion in Limine No. 6. Neither side may present evidence or make arguments to the jury regarding the Second Amendment.

G. *The Court Denies Without Prejudice Government Motion in Limine No. 7 (Wendt's Communications with Third Parties).*

The Government argues, correctly, that Wendt's communications with third parties are likely to be admissible notwithstanding hearsay rules because any statements made by the third parties are being offered to provide context for Wendt's own statements, not for the truth of the matter asserted by the third party. *See, e.g.*, *United States v. Lamm*, 5 F.4th 942, 949 (8th Cir. 2021). As the Government has not, however, identified any specific third party statements (or exhibits containing third party statements) that it intends to offer pursuant to this principle, there is nothing for the Court to admit at this time. The Court therefore DENIES WITHOUT PREJUDICE Government Motion in Limine No. 7.

H. *The Court Denies Without Prejudice Government Motion in Limine No. 8 (Wendt's Self-Serving Hearsay).*

The Government correctly notes that although it can introduce Wendt's out-of-court statements in accordance with Fed. R. Evid. 801(d)(2)(A), the Rule only permits admission of an opposing party's out-of-court statement. It does not permit a party to offer evidence of its own out-of-court statement. Wendt therefore cannot rely on Fed. R. Evid. 801(d)(2)(A) as a basis for offering his own out-of-court statements into evidence.

All the same, there are other grounds on which a party might be permitted to offer evidence of its own out-of-court statement. For example, if the statement is not being offered for the truth of the matter asserted, it might be admissible as non-hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: . . . a party offers in evidence to prove the truth of the matter asserted in the statement."). Wendt also might be permitted to offer his own out-of-court statement as a prior consistent statement under Fed. R. Evid. 801(d)(1)(B) or under the "rule of completeness" set forth in Fed. R. Evid. 106, which states: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time."

Until and unless Wendt offers one of his own statements into evidence, the Court cannot make a determination has to whether he has a legitimate basis for doing so. The Court therefore DENIES WITHOUT PREJUDICE Government Motion in Limine No. 8.

I. *The Court Grants Government Motion in Limine No. 9 (ATF's Lack of Diligence).*

Government Motion in Limine No. 9 revisits an issue the Court has addressed elsewhere: the relevance (or lack thereof) of how ATF handled Wendt's applications for the transfer of machine guns. For reasons explained above, the Court agrees that ATF's putative "negligence or lack of diligence in uncovering the fraud is not a defense." *United States v. Hoffecker*, 530 F.3d 137, 177 (3d Cir. 2008). The Court therefore GRANTS Government Motion in Limine No. 9 and will not permit Wendt to present testimony or argument that ATF's failure to uncover the alleged fraud or false statements is a defense to the charges against him. This does not mean, of course, that ATF's approval of the transfer applications is irrelevant or that Wendt cannot attach significance to ATF's approval decisions, particularly as it relates to elements like falsity and materiality.

*J.   The Court Grants Government Motion in Limine No. 10 (Discovery Matters).*

With one exception, Wendt agrees not to present evidence or argument that the Government allegedly failed to comply with its discovery obligations. He does, however, wish to have his expert testify ATF failed to produce certain guidance that, in Wendt's view, would help demonstrate that his statements in the purchase law letters and demonstration law letters were not false or material. For reasons set forth above, the Court will not permit the expert to offer testimony on this issue, nor will it otherwise allow Wendt to present evidence or argument about alleged deficiencies in the Government's discovery. The Court therefore GRANTS Government Motion in Limine No. 10.

*K.   The Court Grants Government Motion in Limine No. 11 (Jury Nullification).*

Both sides agree it would be impermissible for Wendt to present evidence or argument regarding jury nullification. The Court therefore GRANTS Government Motion in Limine No. 11.

*L.   The Court Denies Without Prejudice Government Motion in Limine No. 12 (Reasonable Doubt).*

Finally, the Government asks the Court to prevent both sides from redefining reasonable doubt. While it is true that the definition of reasonable doubt is for the Court to provide in jury instructions, it is too difficult in the abstract to grant a motion in limine on this topic. The Court therefore DENIES WITHOUT PREJUDICE Government Motion in Limine No. 12. As with other Motions in Limine that have been denied without prejudice, the Government may renew Motion in Limine No. 12 during trial if it believes Wendt's counsel is exceeding the boundaries of permissible advocacy as it relates to the definition of reasonable doubt.

## VII.   CONCLUSION.

The Court GRANTS IN PART and DENIES IN PART the Government's Motion to Exclude Wendt's Proffered Expert Testimony (ECF 282), GRANTS IN PART and DENIES IN PART each side's Motions in Limine (ECF 288; ECF 296), and DENIES Wendt's Motion Regarding the Admission of Audio and Video Evidence at Trial (ECF 297). Most of these rulings are WITHOUT PREJUDICE and subject to reconsideration at trial when the Court will have greater context for evaluating the parties' positions.

IT IS SO ORDERED.

Dated: February 2, 2024

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE