## IN THE IOWA DISTRICT COURT FOR CRAWFORD COUNTY

| | |
|---|---|
| BRADLEY E. WENDT,<br><br>Plaintiff,<br><br>vs.<br><br>MAHANIAM N. PETERSON,<br><br>Defendant. | No. DRCV040414<br><br>FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER |
| STATE OF IOWA, EX REL., BAW, A MINOR CHILD,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | No. DRCV040698 |

On September 4, 2019, trial was held on the plaintiff's Petition to Establish Custody, Visitation and Child Support and other related matters filed on September 7, 2018, and the Answer filed by the defendant on September 25, 2018.    Plaintiff appeared in person and with his attorney, Julie Mayhall; Defendant appeared in person and with her attorney, Maura Sailer.   Brooke Betsworth reported the entire proceeding.

 The pretrial stipulation filed August 30, 2019, states the unresolved issues for the court to decide are: (a) joint physical care or primary physical care of the child; (B) parenting time or visitation; (C) child support; (D) percentage split of uncovered medical expenses; and (E) attorney fees and court costs.  The parties have agreed to joint legal custody.

Both parties testified.  Additional witnesses were called by both parties.  Exhibits



GOVERNMENT
EXHIBIT
6
4:22-cr-199

1 through 4 and 103 through 105, 107, 108, 110 through 114, 116, 117, 122, 128 through 133, 135, 144, 147, 148, 151, 153, 154, 156, and 157 were offered and admitted into evidence.

The court, after reviewing the court file, considering the testimony and exhibits, and examining Iowa law states:

## RELEVANT OTHER PROCEEDINGS

In Crawford County DRCV040698, the Child Support Recovery Unit initiated an action for child support that was set for trial at the same date and time as Crawford County DRCV040414. Jade Haverman appeared on behalf of the Child Support Recovery Unit. Ms. Haverman stated the State of Iowa has no interest. Further, with the filing of a support order, DRCV040698 could be dismissed without prejudice. No party challenged or objected to this statement. Ms. Haverman then requested permission to be excused from further participation in this matter, which was granted without objection.

## FINDINGS OF FACT

Mahaniam and Bradley are the unmarried parents of BAW born in 2014. There are no health problems with the child that impact physical care or parenting time.

BAW is 5 years of age and attending all-day kindergarten in Denison, Iowa.

Mahaniam and Bradley lived together from the fall of 2009 through February 2018.

Mahaniam has a child, NH, born in 2007 from a prior relationship. NH resides with Mahaniam. NH is 12 years of age and in 6th grade (middle school) in Denison, Iowa (Exhibit 1).

Mahaniam and Bradley lived together primarily at Bradley's acreage.  Bradley paid the mortgage, taxes and related expenses while Mahaniam paid the household expenses and other expenses incurred by her children.  The court would note this arrangement for payment of expenses, while not uncommon, allows Bradley to build equity while Mahaniam's monies went primarily for consumable expenses.

Mahaniam is 32 years of age and in good health.  Mahaniam has a degree in dental hygiene from Western Iowa Tech Community College.  Mahaniam has been employed by Hy-Vee beginning in 2008 and employed full-time since 2012. Mahaniam is employed in the pharmacy earning $15 per hour working 40 hours per week.  The parties have agreed Mahaniam has annual income of $31,200. Mahaniam works Monday, Tuesday, Thursday and Friday from 8:15 a.m. to 6:00 p.m. Mahaniam is paid biweekly (26 pay periods per year).

Bradley is 42 years of age and in good health.  Bradley has a police science degree from Western Iowa Tech Community College.  Bradley began working full time two weeks prior to the final hearing for the City of Lake View as a law enforcement officer.  Bradley is earning $23.05 per hour averaging 40 hours per week.  Bradley works 12-hour shifts.  Week one he may work four or five days per week and then in week two would only work two days per week.  This position involves 40 minutes of travel time to and from work.

Bradley worked a second position for the City of Adair as a law enforcement officer, which he planned on ending at the end of the month.  His employment for the City of Adair involved 1 hour and 20 minutes of travel time to and from work.

Bradley is also the president and sole shareholder of BW Outfitters since 2009 to

3

present.  This business involves the sale of firearms and other related matters.  The business has a store in Anita, Iowa (60 to 65 miles away) that primarily handles online firearms sales and a store in Denison, Iowa, involving traditional sales, repair, etc. (see Exhibits 123, 131, 132, and 133).

Bradley's income is disputed.  Bradley was terminated from a law-enforcement position in Harlan, Iowa.  Bradley was terminated from a law-enforcement position in Denison, Iowa, but successfully sued for wrongful termination, receiving approximately $50,000 in lost wages and $231,682 for emotional distress.  The Denison position he had held for approximately 20 years. Bradley receives a $600 per month rental subsidy from the City of Lake View, but is not shown on his 2018 tax return (Exhibit 2).  Bradley's income from BW Outfitters is represented to be zero.  Bradley lists this business with an estimated value of $2 million on his September 3, 2019, affidavit of financial status.  In 2016 he drew $60,000 in salary from the business.  In 2016 it had gross sales of approximately $6.5 million.  In 2017 it had gross sales of $4.4 million.  Mahaniam has successfully shown Bradley lives well beyond his law enforcement salary.  Bradley referred to his accountant when questioned regarding salaries listed, depreciation claimed, debts paid off, retained earnings and ability to purchase other land and/or improvements.  It was disclosed just prior to trial he had purchased income property in Missouri Valley from his grandmother with a mortgage of $75,000.  Bradley met with the tenants the night prior to the trial, yet it was not disclosed on his affidavit of financial status.

Bradley and Mahaniam's relationship was not without problems.  Both acknowledged having affairs while they were together.  Both are now residing with other

4

individuals.   Bradley has been living with another individual and her daughter since March or April 2019. Mahaniam has been involved with another individual since at least June 2019.  Both of these individuals have at times tried to communicate and improve the relationship between Bradley and Mahaniam, albeit unsuccessfully.

Since the parties' separation, they have been exercising parenting time on an alternating week basis.  This alternating week has been since February 2018 to present. Bradley proposes continuing this parenting plan and Mahaniam proposes a more traditional alternating weekend type of parenting plan.

Mahaniam is providing health insurance for BAW.  She provides health insurance, dental and vision at a cost of $64.41 per week.  The employee cost alone is $33.16 per week.  Accordingly, the difference for family coverage is $31.25 per week which covers her two children.  The child support deduction permitted in this case would be $15.63 per week (Exhibit 124).

Mahaniam is requesting Bradley pay her attorney fees of $5,786.60 per Exhibit 156.  Bradley is requesting each party pay their own attorney fees, stating he has incurred $6,132 (Exhibit 4) since August 14, 2019, when he believed there was an agreement.

Remaining facts will be discussed in the Analysis section below.

## CONCLUSIONS OF LAW

### Principles of Physical Care

The primary consideration in determining which parent should have physical care is the best interests of the children. Iowa R.App. P. 6.14(6)( o ); *Northland v. Starr*, 581 N.W.2d 210, 212 (Iowa Ct.App.1998). We must consider the factors set forth in Iowa

Code §598.41(3) (Supp.2005). The objective is to place the children in the environment most likely to bring them healthy physical, mental, and social maturity. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999). We must determine which parent is most likely to minister to the long-range best interests of the children. *In re Marriage of Winter*, 223 N.W.2d 165, 167 (Iowa 1974). In Iowa, the basic framework for determining the best interest of the child has long been in place. In the context of custody decisions, the legislature has established a nonexclusive list of factors to be considered. Iowa Code §598.41(3) (citing nonexclusive factors including suitability of parents, whether psychological and emotional needs and development of child will suffer from lack of contact with and attention from both parents, quality of parental communication, the previous pattern of care giving, each parent's support of the other, wishes of the child, agreement of the parents, geographic proximity, and safety). Although Iowa Code §598.41(3) does not directly apply to physical care decisions, we have held that the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child. *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974) (cited in *In re Marriage of Hansen*, 733 N.W.2d 683,696(Iowa 2007).

There is a presumption that siblings should not be separated. *In re Marriage of Pundt*, 547 N.W.2d 243, 245 (Iowa Ct .App.1996). The primary concern remains, however, to be the best interests of the children. *In re Marriage of Brauer*, 511 N.W.2d 645, 647 (Iowa Ct.App.1993).

When making physical care determinations, we seek to place children in the environment most likely to advance their mental and physical health and social maturity.

6

*In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Our prime concern in fashioning physical care arrangements is the best interests of the children. Id. at 690. To determine the children's best interests, we weigh all relevant conditions affecting physical care. *In re Marriage of Thielges*, 623 N.W.2d 232, 237-38 (Iowa Ct.App.2000).

A. **Joint Physical Care**:

*In re Marriage of Ransom*, 2008 WL 4877545, 760 N.W.2d 208 (Iowa App. 2008) the court stated, "Joint physical care" means an award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child. Iowa Code § 598.1(4) (2007). The rights and responsibilities include, but are not limited to, shared parenting time with the child, maintaining homes for the child, and providing routine care for the child. *Id.* With joint physical care "neither parent has physical care rights superior to the other parent." *Id.* Iowa Code section 598.41(5)(a) provides:

> If joint legal custody is awarded to both parents, the court may award joint physical care to both joint custodial parents upon the request of either parent.... If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child.

Any consideration of joint physical care must still be based on Iowa's traditional and statutorily required child custody standard of the best interest of the child. *See id; In re Marriage of Hansen,* 733 N.W.2d 683, 695 (Iowa 2007).

Physical care issues are not to be resolved based upon perceived fairness to the *spouses,* but primarily upon what is best for the *child.* The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity.  *Hansen,* 733 N.W.2d at 695

7

(emphasis in original) (citing *Phillips v. Davis–Spurling,* 541 N.W.2d 846, 847 (Iowa 1995)).

With this consideration in mind, our Supreme Court recently devised a nonexclusive list of factors to be considered when determining whether a joint physical care arrangement is in the best interests of the children. *Id.* at 697–99.

The factors are (1) "approximation"—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."  *In re Marriage of Berning,* 745 N.W.2d 90, 92 (Iowa Ct.App.2007) (quoting *Hansen,* 733 N.W.2d at 697–99).

### B.  Physical Care

Once it is decided that joint physical care is not in the best interest of the children, the court must next choose which caregiver should be awarded physical care. Iowa Code § 598.41(1)(*a*), (5). The parent awarded physical care is required to support the other parent's relationship with the child. *Id.* § 598.41(5)(*b* ). In making this decision, the factors of continuity, stability, and approximation are entitled to considerable weight. The court should be alert, however, to situations where the emotional bonds between children and a parent who has not been the primary caregiver are stronger than the bonds with the other parent. *In re Marriage of Hansen*, at p. 700.

There may be circumstances, of course, that outweigh considerations of stability, continuity, and approximation. For example, if a primary caregiver has abandoned responsibilities or had not been adequately performing his or her responsibilities

8

because of alcohol or substance abuse, there may be a strong case for changing the physical care relationship. *In re Marriage of Ford,* 563 N.W.2d 629, 633 (Iowa 1997) (absence from home and less personal stability of former primary caregiver); *see also Principles* § 2.08(1)(a)-(h). In addition, the quality of the parent-child relationship is not always determined by hours spent together or solely upon past experience. Gary Crippen, *Stumbling Beyond the Best Interests of the Child: Reexamining Child Custody Standard-Setting in the Wake of Minnesota's Four Year Experiment with Primary Caretaker Preference,* 75 Minn. L.Rev. 427, 489-92 (1990); Schneider, 89 Mich. L.Rev. at 2283-87. All other things being equal, however, we believe that joint physical care is most likely to be in the best interest of the child where both parents have historically contributed to physical care in roughly the same proportion. *Ellis,* 705 N.W.2d at 103; Singer & Reynolds, 47 Md. L.Rev. at 521-22. Conversely, where one spouse has been the primary caregiver, the likelihood that joint physical care may be disruptive on the emotional development of the children increases. *Coulter,* 502 N.W.2d at 171; *Muell,* 408 N.W.2d at 777. *In re Marriage of Hansen*, at p. 697-98.

A custodial parent may refuse to deliver the children to a noncustodial parent for visitation to an irresponsible caregiver if it is evident that the noncustodial caregiver's condition would subject the child to probable danger of injury.  See *In Re Petition of Holub*, 584 N.W.2d 731, 733 (Iowa App. 1998); *Sulma v. Iowa District Court for Washington County*, 574 N.W.2d 320, 321 (Iowa 1998); *In Re Marriage of Fite*, 485 N.W.2d 662, 664 (Iowa 1992).

If a noncustodial parent behaves irresponsibly during his or her visitation, that conduct may be made the subject of further proceedings in the district court and may be

9

grounds for reduction or elimination altogether of his or her child visitation rights.  *Fite*, 485 N.W.2d at 664.

Liberal visitation rights with the noncustodial parent are to be encouraged and are in the best interests of the children.  Both parents are charged with maintaining the best interests of the children, and thus with cooperating on visitation.  A child should be assured the opportunity for the maximum continuing physical and emotional contact with both parents.  Unless visitation with the noncustodial parent will in some way injure the child, it is not to be prohibited.  *In Re Marriage of Rykhoek*, 525 N.W2d 1, 5 (Iowa App.  1994); *In Re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa App. 1993); *In Re Marriage of Riddle*, 500 N.W.2d 718, 720 (Iowa App. 1993); Section 598.41(1) of the Iowa Code (1997).

## Principles Relating to Attorney Fees

Trial courts have considerable discretion in awarding fees.  In exercising its discretion to award attorney fees, the Court should make an award which is fair and reasonable in light of the parties financial positions.  *In re Marriage of Grady-Woods*, 577 N.W.2d 851 (Iowa App. 1998).  See also *In re Marriage of Titterington*, 488 N.W.2d 176 (Iowa App. 1992).

A party who substantially prevails in its complaint is entitled to all reasonable fees and costs.  *Tuf Racing Prods, Inc. vs. American Suzuki Motor Corp.*, No. 94 C 50392WL 669226 (N.D.Ill, August 27, 1999.  Cited in *Madison vs. IBP*, 49 F.2d 730, 1999 (S.D.IA. 1999).  The degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical in determining the size of the reasonable fee, not whether to grant a fee.    Work on an unsuccessful claim cannot be deemed to have been "expended in

pursuit of the ultimate result achieved." *Davis vs. County of Los Angeles*, 8 E.P.D. 5049 (CD Cal. 1974) cited in *Hensley v. Eckerhart*, 461 U.S.424 (1983) Plaintiff's Exhibit E.

Iowa courts have generally followed the same analysis in the awarding of attorney fees and expenses. The burden of proof is upon the applicant for attorney fees to prove the services were reasonably necessary and the charges were reasonable in amount. *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990). *Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11 (Iowa 2001).

Generally, attorney fee awards are based upon multiplying the reasonable number of hours spent on litigation by a reasonable hourly rate. This is known as the lodestar. *Casey vs. City of Kabool*, 12 F.3d 799, 805 (8th Cir. 1993). *Landals*, supra at 898 (Iowa 1990).

A reasonable hourly rate usually relates to the local legal market. *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 532 (8th Cir. 1999). In *Madison*, supra, the Court stated national rates may provide a reasonable hourly rate in specialized areas of law. Reasonable fees are calculated according to similar services of lawyers reasonably comparable skill, experience and reputation in the community. *Beckman v. Kitchen*, 599 N.W.2d 699, 702 (Iowa 1999) and *Landals*, supra at 897. *Blum v. Stenson*, 465 U.S. 886 895, n.11 (1984) (cited in *McDonald vs. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988), all cited in *Madison vs. IBP*, supra. Twelve factors to guide the Court in determining the lodestar were stated and set forth in the *Madison vs. IBP* case which was quoting *Johnson vs. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). See *Landals*, supra at 898.

## ANALYSIS

11

This case involves one primary disputed issue; namely, who should have physical care.  Bradley proposes a continuation of the shared physical care the parties have been exercising for the last 18 months.  Mahaniam proposes her having primary physical care and Bradley having parenting time.  The court has to decide which of the competing physical care proposals is in the best interest of the child.

The court did not hear any evidence of inappropriate parenting when the child is in either of her parent's physical care.  Bradley's primary position is the shared physical care has worked well, is in their child's best interest, and should be continued.  Mahaniam mentioned she has been the primary caretaker and that shared physical care is not working well and that Bradley is not communicating or co-parenting.  The court is not unmindful the shared physical care was discussed as a long-term possibility until August 2019 when disputes arose.  Under the "approximation considerations" mentioned above, it is clear Mahaniam has been the primary caretaker of this child up to their separation.  The court has also considered the relationship with the child's other sibling.  BAW has a close relationship with both parents, doing reasonably well in school, and has not been put in any situations where her health or safety has been affected.

Bradley is a hard-working father who has been successful in his business endeavors and investments, though his law enforcement career has had some incidents that caused a change in plans.  In order to continue Bradley's law enforcement career, he is now traveling some distance away from his home and child.  This windshield time also affects his time with his business.  Bradley has a good relationship with Mahaniam's family.  Bradley likes outdoor activities and describes their daughter as a

12

tomboy and enjoying these activities as well.

Mahaniam was the primary provider up until the parties' separation, taking care of medical appointments, shopping, food preparation, childcare and similar tasks.  After their separation, Bradley did not know who some of these providers even were.

Communication and co-parenting has been a challenge since their separation. Bradley does not want any face-to-face communication, preferring text or email, but generally asserts communication is not needed if each parent exercises common sense.  Mahaniam describes his attitude and demeanor as someone unwilling to co-parent or communicate with her.  Bradley's response is he does not want his words or positions twisted against him.

A shared physical care arrangement is easier when children are not in school.  It allows for limited transitions and none if the transitions occur at school or daycare.  It allows the children time to settle in at each parent's home.  However, as children become involved in activities, shared physical care requires more effective parental communication and cooperation to arrange weekly activities; for example, soccer, dance, whether both parties agree to take the child to the activity, et cetera.  Activities typically have to be agreed upon and schedules coordinated and arrangements made for who is picking up and dropping off during their respective parenting time. Sometimes, seven days away from another parent can be unsettling, though this child has adapted reasonably well considering her young age.

The court finds Bradley and Mahaniam's communication and co-parenting has had problems since their separation, which have been magnified with her beginning kindergarten.  Bradley has a challenging task of coordinating work schedules that

13

affects his flexibility and need for longer advance notice. If Bradley did not have his girlfriend or other family, this would be a bigger difficulty. The court believes Bradley's request for continued shared care is to avoid having to co-parent with Mahaniam and to avoid contact with her at transitions. Bradley comes across as someone with an attitude that is used to getting his way. Bradley refused to let Mahaniam return to pick up items after their separation. He seems angry over her affair. He searched her phone, does not want any face-to-face communication, has threatened her boyfriend, and seems to disrespect him with inappropriate comments even when the child is present. He honks his horn for the child to come outside from around the corner, even if early in the morning, because he does not want to see Mahaniam or her boyfriend. This attitude and demeanor is hard to comprehend when he acknowledges he had an affair before Mahaniam did in their relationship and the fact that he has had two subsequent relationships, including his current live-in partner. This is not the attitude and demeanor of someone who can effectively communicate and co-parent.

Bradley's witness described him as arrogant and full of himself. The court concurs with this assessment, from reviewing the text messages and watching and judging Bradley's demeanor during the trial. He was very forthright in his answers until the questions got into areas regarding his earnings and ability to accumulate assets on a relatively modest salary that would not appear to justify these expenditures and then he would refer back to his accountant. The court finds Bradley was less than forthright in his answers or explanation of how he can accumulate assets. At the time of trial he had a recent job change, recent purchases that were not reflected on his affidavit of financial status, and had a general inability to explain his business income assets.

14

Shared physical care for a child who is not in school can mask problems that surface when the child is older and begins school.  The court believes that is what is happening now.  Disputes are taking place and beginning to grow in frequency.  Bradley seems unwilling or unable to compromise on school and/or activities and other related matters. It appears these problems were just below the surface while they were together and have been magnified in the time they been separated and since their child has begun school.

Bradley has requested the court designate a mediator for their disputes.  The court has never done so, absent agreement between the parties.  The request for a mediator was another indication of anticipated problems and unwillingness to resolve those disputes without the cost and expense of a third-party mediator.  Even then, there is no assurance either party would abide by the suggested proposal.  While Bradley may be a good parent, he is not a good co-parent or joint custodian.

For the reasons mentioned above, the court respectfully declines to continue the shared physical care arrangement and elects to place physical care with Mahaniam, subject to Bradley's parenting time.

The court will have alternating weekends of parenting time, alternating holidays, and in the summer will have the parties alternating one week on and one week off as they have done in the past.  The court believes this will allow Bradley to maintain a significant relationship with his daughter, avoid some of the school problems, but still allow him to have expanded time above and beyond what Mahaniam proposed for the summer.

The court is not unmindful it is adopting for the summer exactly what it refused to

15

do for the school year; however, the court believes the areas of potential dispute should decrease during the summer months when compared with during the school year. The court also believes this will provide Bradley with the opportunity to display improved communication and co-parenting that could, subject to there being a material and substantial change in circumstances not contemplated by the parties, lead to more time with his daughter.

The court has attached Exhibit D, General Rules Applicable to Parenting Time, which should be useful in resolving many of the parties' future disputes.

Attached is a child support worksheet (Exhibit C) indicating Bradley should pay child support of $918 per month. The court has used Mahaniam's agreed-upon income of $31,200 per year. The court calculated Bradley's income at $23.05 per hour for a 40 hour workweek, totaling $922 gross income per week, plus $35.40 per hour working 2 ½ hours per week, or $88.50 per week, equals $52,546 gross income, plus $6,000 per year for his $500 rental subsidy. The court did not deduct any withholding or FICA from the rental subsidy. In addition, the court has included $20,000 of income from Bradley's business. The business has gross sales in excess of $4 million per year or more in recent years. The court finds the evidence overwhelming that Bradley is receiving income from his business to purchase/subsidize real estate investments, home improvements, purchase of other equipment, et cetera. Without considering the alternating tax exemptions and without considering any business income, his child support obligation is around $764 per month. Including $10,000 of his business income would increase the support obligation to $837 per month. If the court imputed $60,000 per year income to Bradley, the child support amount would be $1157. It is difficult to

16

ascertain what amount should be included for child support calculation purposes.  The court has concluded, at a bare minimum, $20,000 should be included for child support calculation purposes.  The court allowed Bradley $20 per month in union dues deduction.  The court has granted health insurance premium deduction of $14.56 per month to Mahaniam for covering the child and has given her one qualified additional dependent deduction.  The court has alternated the tax exemptions and adjusted the child support accordingly.

The court finds that Mahaniam has been primarily successful in her request for physical care and that Brad has the greater earning capacity.  Accordingly, the court finds Bradley should pay $3,857.34 (two-thirds) of Mahaniam's attorney fees.  This amount will be entered as a judgment that will draw interest after 30 days. Bradley, if not paid in full, should pay at least $500 per month beginning December 15, 2019, and continuing on the 15th of each and every month thereafter on this attorney fee obligation and, if so, no execution will issue.

Court costs should be paid one-half by each party.

## JUDGMENT AND DECREE

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:**

1.  **JOINT CUSTODY:** The parties shall be granted joint custody of the parties' minor child: BAW, born in 2014.  The parties shall each have the rights and responsibilities toward said minor child as provided by Section 598.1(3) and Section 598.41, Code of Iowa.  Pursuant to Section 598.1 (3), Code of Iowa, as amended, joint custody means an award of legal custody of a minor child to both parents jointly, under which both parents have legal custodial rights and responsibilities

17

toward the child and under which neither parent has legal custodial rights superior to those of the other parent. Rights and responsibilities of joint legal custody include, but are not limited to, equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.

2. **PHYSICAL CARE:** The physical care of the child shall be with Mahaniam, she having the responsibility to maintain the principal home, provide education, and the routine care of the child.

3. **VISITATION:** Bradley shall have visitation at all reasonable times and places as agreed upon by the parties. If the parties are unable to agree, Bradley shall have the following specified rights of visitation with the minor child as set forth herein:

(a) **Weekend Visitation:** Bradley shall be entitled to visitation every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m. beginning November 22, 2019.

(b) **Holiday Visitation:** The parties shall alternate holidays as set out on the attached Exhibit A. This holiday visitation schedule shall supersede the regular visitation schedule. The regular visitation schedule will continue with the parent who did not have the child on the previous holiday and continue on from that point, alternating between the parents every other weekend.

(c) **Summer Visitation:** Commencing the first Friday that is one full week after school gets out and continuing until Friday one full week before school resumes, the parties shall alternate visitation on a week-on, week-off schedule commencing Fridays at 6:00 p.m.

(d) **Transportation:** Unless otherwise agreed, the parties shall share equally in visitation transportation duties. If an agreement cannot be reached, Bradley shall pick up the child from the child's school or daycare or Mahaniam's home to begin his parenting time and Mahaniam shall pick up the child from the child's school or daycare or Bradley's home to begin her parenting time. A parent or a responsible adult to whom the parent is related by blood or marriage or an individual with whom they are currently living with may perform the transportation duties.

4. **CHILD SUPPORT:** Bradley shall pay the sum of $918 month for the support of

18

the minor child beginning on the 1st day of November, 2019, with a like sum due on or before the first day of each and every month thereafter until said support obligation is terminated.  The child support obligation for such child shall terminate upon the emancipation of such child, the child's death, or when the child reaches the age of eighteen years, unless said child has not completed her high school education, in which event such obligation shall continue until such child reaches the age of nineteen years or completes her education or receives her high school degree or equivalent.  Said payments are to be made through the Clerk of the District Court, Crawford County Courthouse, Denison, Iowa, OR if previously ordered to Collection Services Center, PO Box 9125, Des Moines, IA 50306 -9125. The court retains jurisdiction to sign a mandatory wage withholding order if requested and presented with a proposed order.  See attached child support guidelines (Exhibit C), which are incorporated herein.

Bradley is required to comply with Iowa Code §598.22B. He shall supply the Clerk of Court or the Child Support Recovery Unit of the Iowa Department of Human Services, residential and mailing addresses, telephone numbers, driver's license number, social security number, full name (including any changes) and the name, address, and telephone number of any employer.  Changes in any of the above information shall be reported to the Clerk or the Child Support Recovery Unit whenever they occur.  In any subsequent child support action initiated by the Child Support Recovery Unit or between the parties, upon sufficient showing that diligent effort has been made to ascertain the location of Bradley, the unit or the court may deem due process requirements for notice and service of process to be met with

respect to Bradley upon the delivery of a written notice to the most recent residential or employer address filed with the Clerk of Court or the Child Support Recovery Unit.

5.  **INSURANCE:**    Mahaniam shall provide medical insurance for the minor child if it becomes available at a reasonable cost.  "Uncovered medical expenses" means all medical expenses for the child not paid by insurance.  Mahaniam shall pay the first $250 per year of uncovered medical expenses.  Uncovered medical expenses in excess of $250 per child shall be paid by the parents in proportion to their respective net incomes.  "Medical expenses" shall include, but not be limited to, costs for reasonably necessary medical, orthodontia, dental treatment, physical therapy, eye care, including eye glasses or contact lenses, mental health treatment, substance abuse treatment, prescription drugs, and any other uncovered medical expense. Uncovered medical expenses are not to be deducted in arriving at net income. Bradley shall pay **70%** and Mahaniam shall pay **30%** of uncovered medical expenses. Attached is the procedure to follow for healthcare expenses (Exhibit B).

6.  **DEPENDENCY DEDUCTIONS:** Bradley shall be entitled to claim BAW in 2019, provided he is current on his child support obligation, for federal and state income tax purposes.  Thereafter, Bradley shall claim the minor child in all odd years and Mahaniam shall be able to claim the child in all even years.  Bradley's award of any dependency exemption is conditioned upon being current in the payment of child support as of December 31 for that tax year in which he seeks to claim the child.

7.  **RELATED PROCEEDINGS:** Crawford DRCV040698 is dismissed without prejudice upon motion of the Child Support Recovery Unit and with the consent of all parties for the reason child support has been determined in this case file. Costs taxed

20

to Bradley.

8. **<u>COURT COSTS AND ATTORNEY'S FEES</u>:**

a. Court costs shall be taxed one half to each party.

b.  Bradley shall pay $3,857.34 of Mahanaim's attorney fees. If not paid within 30 days, this judgment shall draw interest at the statutory rate.  If not paid within 30 days, execution shall not issue if Bradley is paying not less than $500 per month beginning December 15, 2019, and continuing on the 15th of each and every month thereafter until paid in full.  If so, no execution shall issue.

9.  The clerk shall notify the attorneys of record.

SO ORDERED.

21



State of Iowa Courts

**Type:**          OTHER ORDER

| **Case Number** | **Case Title** |
| --- | --- |
| DRCV040698 | STATE OF IOWA VS BRADLEY E WENDT AND MAHANAIM PETERSON |

So Ordered

_Duane E. Hoffmeyer_

Duane E. Hoffmeyer, Chief Judge,
Third Judicial District of Iowa

Electronically signed on 2019-11-15 14:03:17    page 35 of 35