IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRADLEY EUGENE WENDT,<br><br>Defendant. | Case No: 4:22-cr-199<br><br>**DEFENDANT'S EMERGENCY MOTION FOR CONTINUANCE OF SENTENCING AND NOTICE OF SUPPLEMENTAL AUTHORITY** |

Defendant Bradley Eugene Wendt ("Wendt") hereby moves to continue his sentencing based on recent Supreme Court cases that create a fundamental change in the legal landscape concerning this case. Specifically, Wendt requests that the Court allow the parties to brief these issues and then reconsider its Order Denying Motion for Judgment of Acquittal and/or New Trial, ECF No. 381 ("Order"). These important Supreme Court cases speak directly to the underpinnings of the Court's Order regarding deference to an agency and the role of the legislature in defining crimes. In this most important of matters, justice requires a full exploration of these cases and their impact on Wendt's case before he is sentenced.

**I.     Recent Supreme Court Cases**

On June 28, 2024, the United States Supreme Court issued its opinion in *Loper Bright Enters. v. Raimondo*, 603 U.S. ___ (2024) ("*Loper Bright Enterprises*") and *Fischer v. United States*, 603 U.S. ___ (2024) ("*Fischer*"). In *Loper Bright Enterprises*, the Supreme Court struck down the *Chevron* doctrine regarding courts' deference to agency interpretations of the statutes those agencies administer. *Loper Bright Enters.*, slip op. at 1. First and foremost, the Supreme Court held that courts should no longer defer to an agency's interpretation of a statute where they find the statute to be ambiguous. *Id*. at 35. In addition, the Supreme Court emphasized the danger

1

of the amorphous nature of courts' deference to an agency's interpretation of a statute. Specifically, it noted that courts often simply rely on the agency's interpretation implicitly, without any overt statement of such. *Id*. at 28. Further, the Supreme Court expressed its concern with the hard-to-define nature of "ambiguity" itself. *Id*. at 30-31. The Supreme Court noted: "But the concept of ambiguity has always evaded meaningful definition. As Justice Scalia put the dilemma just five years after Chevron was decided: 'How clear is clear?'" *Id*. at 30. (citation omitted).

In *Fischer v. United States*, 603 U.S. ___ (2024), the Supreme Court held the district court had improperly allowed the government to read the obstruction of justice statute too broadly with respect to the defendant's conduct on January 6. *Fischer*, slip op. at 1, 16. The Supreme Court considered the context of other statutes passed by Congress. *Id*. at 11. And the Court explained that cabining its reading of the statute at issue "affords proper respect to 'the prerogatives of Congress' in carrying out the quintessentially legislative act of defining crimes and setting the penalties for them." *Id*. at 15 (citation omitted). It also stated that the government's reading of the statute "would intrude on that deliberate arrangement of constitutional authority over federal crimes, giving prosecutors broad discretion . . . ." *Id*. at 15-16.

On June 14, 2024, the United States Supreme Court issued its opinion in *Garland v. Cargill*, 602 U.S. ___ (2024). There, the Supreme Court held that the ATF exceeded its statutory authority by issuing a rule that classifies a bump stock as a machine gun. *Id*., slip op. at 6. Notably, the Supreme Court did not defer to the ATF and held fast to a strict interpretation of Congress's definition of a "machine gun." *Id.* at 14, 18. In doing so, it relied on dictionary definitions of the terms used in the statute and held that the government is constrained to the

literal meanings of those words and phrases. *Id*. at 7. Furthermore, the Court rejected the argument that its narrow interpretation of the definition of a "machine gun" would make the statute less effective. *Id*. at 18. Lastly, the Supreme Court noted that ATF's new interpretation of the definition of a "machine gun" was inconsistent with its own prior interpretation—an "about-face" that undermined ATF's ability to "plausibly argue" that its new interpretation was correct. *Id*. at 3-4, 18.

In a short concurrence, Justice Alito cut to the heart of the case. He noted that—even though Congress may not have seen a material difference between a machine gun and a semiautomatic rifle equipped with a bump stock at the time it enacted the relevant legislation; and that even though the ATF's change in its interpretation of "machine gun" was brought about by the horrible shooting spree in Las Vegas in 2017—changing the law to be anything other than the literal meaning of the statutory text was up to Congress, not the ATF. *See id*. (Alito, J., concurring).

## II. Applicability To This Case

Here, the Supreme Court's clear and powerful message requires a halt to these proceedings. Specifically, these three new Supreme Court cases demand further review for the following reasons:

*First*, the Court's Order improperly relied on the ATF's purported "official use" requirement. The Court relied on the ATF's regulations and interpretations of terms extensively in the jury instructions and its Order. For example, the Court concluded: "[r]ead collectively, the governing statutes and regulations are not ambiguous." ECF No. 381 at 17. However, as the Supreme Court has now made clear, courts cannot rely on such regulations and agency interpretation to define a criminal offense. The Court acknowledged that section 922(o) does not

3

contain the Government's requested language of "official use." *Id*. at 11. Also, the Court relied on a definition of "written application" in 26 U.S.C. § 5812(a) as requiring a purchase law letter. However, the "written application" does not include a law letter, as the Government has now conceded. Rather, the "written application" is simply the ATF Form. The Government has conceded this point.

Congress set forth what it wished to make a criminal offense in 26 U.S.C. § 5861 and 18 U.S.C. § 922. Congress has specifically set forth the possession, transfers, and other activities regarding NFA items that are punishable as criminal offenses. *See* 26 U.S.C. § 5861. Likewise, in sections 5861(l) and 922(m), Congress specifically set forth the false statements that it wishes to criminalize regarding federal firearms transactions. As the Government has now conceded, Wendt's actions do not qualify under any of these statutes.[1]

No court has ever applied an "official use" restriction to 18 U.S.C. § 922(o). Nor has any court ever relied upon the violation of a registration requirement under 18 U.S.C. § 922(o). And no court has ever upheld the prosecution of a police officer under 18 U.S.C. § 922(o). The cases the Court and the Government have relied upon do not involve police officers and do not actually rely on an official use requirement for a particular machine. *See* ECF No. 361, at 4-6. The only case to address the prosecution of a police officer was *Vest* and it held it unconstitutionally vague. *United States v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006). And *Vest* is not distinguished by the cases the Court cites: *United States v. Theunick*, 651 F.3d 578 (6th Cir. 2011); *United States v. Carn*, No. 13CR000346, 2018 WL 1413971 (D. Nev. Mar. 20, 2018). Neither of those cases involved a section 922(o). And that is crucial because, as the *Theunick* court itself

---

[1] The only statute the Government now latches onto is 18 U.S.C. § 922(a)(6), for the first time in its sentencing brief, under an ill-fated attempt to change the theory of the case into Wendt attempting to deceive other dealers after the jury acquitted him of attempting to deceive the ATF.

explained: "By contrast, § 922(o) is not charged in this case, and the law enforcement defense in § 922(o)(2)(A) does not appear in the statutes charged." *Theunick,* 651 F.3d at 587.

Further, the Court improperly rejected the legislative history relied upon in *Vest*, *i.e.*, the colloquy between Senators Dole and Hatch, as "stray comments by individual" legislators. However, one of those legislators was the Majority Leader of the Senate. And that colloquy was placed on the Congressional Record. *See* Vest, 448 F. Supp. 2d at 1010 (citing 132 Cong. Rec. S538-04, 99th Congress, 2d Session, 1986 WL 7744609 at *6 (May 6, 1986)).

The Government and the ATF were allowed to manipulate § 922(o)(a)(2) and convict Wendt essentially of violating the registration requirement of a particular machine gun. Though sometimes referred to as a law enforcement exception, § 922(o)(a)(2) is much broader than just law enforcement. It is undisputed that it also applies to dealers and their possession of sales samples. In fact, as the Government properly concedes, it goes even further and applies to the customers of dealers regardless of whether the customer's possession has anything at all to do with a government purchase. Further, Iowa law permits both dealers and police officers to possess machine guns so long as they are not otherwise committing a crime. *See* Iowa Code § 724.2. Indeed, this is consistent with the legislative history of § 922 in that the statute is only meant to apply to crime guns. Moreover, § 922 must be read in this case in the context of both Congress and the ATF approving police officers to purchase machine guns with their own money. The point is that § 922(a)(2) only refers to the authority to permit possession generally, not the use restriction of a particular firearm.

In addition, this improper application of an "official use" requirement also fatally infected the "purchase law letter" false statement count. Between the "purchase law letter" false statement instructions and the illegal possession instructions, the jury was invited to conclude

that any subsequent use of a machine gun outside the official use of it would effectively render that transaction illegal. As such, because the "official use" term should have been read as no more than a purchase authorized by a law enforcement agency, that count is also flawed.

*Second*, the Court's Order improperly relied on the ATF's "demonstration law letter" requirements. Again, Court relied on the ATF's regulations and interpretations of terms extensively in the jury instructions and its Order in this regard. Essentially, what occurred here is that the Court (1) adopted the Government's incorrect interpretation of what should be required in a "demonstration law letter" and then (2) improperly included it into the jury instructions wherein it effectively assigned that meaning to Wendt's statements and convicted him of failing to meet these new requirements.

The ATF's purported demonstration law letter requirements are not contained in any statute nor in any regulation. Rather, they started getting used in practice through a sample letter from the ATF. Then the ATF issued informal guidance stating that the letter was now the required standard. However, the ATF issued that informal guidance after the law letters and transactions in this case. In fact, Wendt never even made those statements in any of his law letters. And Wendt was not allowed to challenge this after-the-fact nature of the requirement by putting it into evidence or obtaining discovery from the Government on other approvals during the time that did not include the purported required language. Indeed, even the ATF's own regulation expressly prohibits the ATF from requiring anything beyond "expressing a need for a particular model or interest in seeing a demonstration of a particular weapons." See 27 C.F.R. § 479.105(a).

Then, the Court crafted the jury instructions in way that adopted the ATF's new interpretation of the regulation as a requirement that Wendt had to meet otherwise his statement

6

was per se false. The requirement told to the jury was that the machine gun had to be in connection with a potential future purchase, as opposed to a possible purchase (*i.e.*, authority to purchase), or even just interest in seeing a demonstration unrelated to a purchase. Here, none of the law letters even stated "for future potential purchase." Wendt then had to prove that he met the ATF's new, after-the-fact requirement (imposed in a Guidance letter after his letters). The trial was then about whether Wendt met this new requirement, rather than whether he made a false statement. He did not have the opportunity to challenge the new requirement. In line with this approach, the Court rejected his request for a *Harra* ambiguity instruction. In its Order, the Court did not directly address the *Harra* ambiguity issue or the proof problem of "possible" versus "potential." In short, Wendt was convicted for not meeting the requirements rather than for making a false statement. This is ironic now that the Government has admitted that this language is not even required by any federal gun law.

In conclusion, the ATF's attempt to regulate by prosecution here is even more egregious than its attempt to legislate through rulemaking in *Cargill* and is now further belied by the Supreme Court's decisions in *Loper Bright Enterprises* regarding the deference heretofore given to an agency, and in *Fischer*, regarding the importance of the role of the legislature in defining crimes. When read together, these three new cases send a clear and powerful message from our nation's highest court about that overreach of the Executive Branch that relates directly to this case.

Accordingly, Wendt requests that the Court continue his sentencing to allow for the proper consideration of this new Supreme Court precedent on his case.

Dated: June 30, 2024            **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
Rachel A. Yaggi, AT0014994
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
Email: *rachel.yaggi@faegredrinker.com*

***ATTORNEYS FOR DEFENDANT WENDT***

**CERTIFICATE OF SERVICE**

     I hereby certify that on this 30th day of June 2024, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

                                                             */s/ Paulette Ohnemus*